James L. MANIERE

v.

The UNITED STATES.

No. 93–624C.

United States Court of Federal Claims.

May 17, 1994.

Michael A. Conway, Royal Oak, MI, for plaintiff.

Ross D. Cooper, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

## OPINION

YOCK, Judge.

This case comes before the Court on the defendant's motion to dismiss. The plaintiff, James L. Maniere, is seeking recovery of his investment as a shareholder in the now defunct First Federal Savings and Loan Association of Pontiac, Michigan, which the Government placed in receivership and ultimately closed. Specifically, the plaintiff asserts a claim based in contract as a third-party beneficiary to the Government's contract with First Federal Savings and Loan Association and, as an alternative, a claim based on a Fifth Amendment taking of property theory. In the instant motion, the defendant argues that the plaintiff demonstrates neither jurisdiction in this Court for his contract claim nor the requisite standing to maintain his takings claim. Since the Court agrees with the Government's position on these two matters, the Court grants the defendant's motion to dismiss.

### *Facts*

In June of 1990, Mr. James L. Maniere purchased 16,000 shares of common voting stock in the First Federal Savings and Loan Association (First Federal) of Pontiac, Michigan. First Federal operated under the rules and regulations established by the Federal Home Loan Bank Board (FHLBB) and the Federal Savings and Loan Insurance Corpo-

ration (FSLIC). On August 9, 1989, however, Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 (FIRREA), Pub.L. No. 101–73, 103 Stat. 183, which reorganized the supervisory governmental entities for savings and loan associations. Under the FIRREA, the Office of Thrift Supervision (OTS) became the successor to the FHLBB, and the Federal Deposit Insurance Corporation (FDIC) became the successor to the FSLIC. Sections 401, 407, 103 Stat. 354–57, 363. Additionally, and also pursuant to the FIRREA, the OTS issued new regulations on December 7, 1989, regarding acceptable accounting practices for the computation of certain assets, including the computation of "goodwill."[1] 12 U.S.C. § 1462a (Supp. IV 1992).

As both parties recognized in the briefings, First Federal became insolvent largely as a result of statutory and regulatory changes regarding the computation of goodwill as an asset. Prior to the enactment of the FIRREA, goodwill maintained the accounting status of an amortizable asset. In reliance on this status, in September of 1989, First Federal acquired Citizens Federal Savings (Citizens Federal) of Jacksonville, Florida. In a contract between First Federal and the FSLIC, the FSLIC approved the acquisition of Citizens Federal by First Federal. *See* Assistance Agreement among The Federal Savings and Loan Insurance Corporation and First Federal Bancorp, Inc., First Federal Savings Bank and Trust, Lakeland Service Corporation, Citizens Federal Savings Bank 1–2 (September 1, 1988). In addition, the FSLIC and FHLBB also allegedly agreed to allow the amortization of the goodwill in Citi-

---

**1.** In *Winstar Corp. v. United States,* 994 F.2d 797 (Fed.Cir.1993), the United States Court of Appeals for the Federal Circuit explained "goodwill":

Under [the purchase method of accounting] ... the book value of the acquired thrift's assets and liabilities was adjusted to fair market value at the time of the acquisition. Any excess in the cost of the acquisition (which included liabilities assumed by the acquirer) over the fair market value of the acquired assets was separately recorded on the acquirer's books as "goodwill." In other words, the government agreed to allow the plaintiffs and others in similar circumstances to treat what was a deficit in capital as an asset. Goodwill was considered an intangible asset that could

be amortized on a straight-line basis over a number of years. The difference between the aggregate fair market value of liabilities assumed by the acquirer and the aggregate fair market value of the failing thrift's assets was known as "supervisory goodwill," in the context of a supervisory merger, and was recorded on the resulting institution's balance sheet as an asset includable in capital for purposes of satisfying [the Bank Board's] minimum capital requirements.

*Id.* at 802 (citing *Winstar Corp. v. United States,* 21 Cl.Ct. 112, 113 (1990)). In referring to the above-described accounting method, the Federal Circuit characterized goodwill as "accounting gimmickry." *Id.* 994 F.2d at 805.

zens Federal by First Federal as a capital asset. First Federal required the inclusion of goodwill for sufficient capitalization to maintain solvency following the acquisition. On December 7, 1989, however, the OTS issued regulations which prohibited ᵗhe amortization of goodwill as an asset. Without this necessary component of capitalization, on October 16, 1991, OTS declared First Federal insolvent.

Based on the foregoing facts, on October 8, 1993, the plaintiff filed a complaint in this Court for the recovery of his investment as a shareholder in First Federal. In the complaint, the plaintiff presented two bases for recovery against the United States.

The plaintiff first claims a breach of contract. The plaintiff argues that First Federal had contracted with the FSLIC and FHLBB regarding the propriety of the amortization of goodwill and that the Government breached this contract by the passage of FIRREA and the promulgation of regulations in conflict with guarantees made under the terms of that agreement. In the defendant's instant motion to dismiss, however, the defendant seeks a dismissal under Rule 12(b)(1) of the Court of Federal Claims (RCFC) for lack of subject matter jurisdiction in the absence of a showing of privity of contract. The defendant asserts that this Court recognizes the privity of contract requirement as a jurisdictional prerequisite to a contract suit in this Court and that the plaintiff maintains no evidence of such in its complaint. In the plaintiff's response, however, the plaintiff claims an exception to the privity requirement as a third-party beneficiary of the contract between First Federal and the FSLIC. As apparent evidence of this status, the plaintiff proffers the affidavit of Mr. Joseph F. Michael, the Executive Vice President of First Federal, which states that First Federal intended that its shareholders benefit from the contract made with the FSLIC. In its reply, however, the defendant rejects the plaintiff's third-party beneficiary argument based on both factual and legal grounds. Factually, the defendant cites the Assistance Agreement made between the FSLIC and First Federal which expressly precludes benefit to any party other than those recited in the agreement, and legally, the defendant rebuts the plaintiff's claims based on the legal standards of this Court for finding third-party beneficiary status in a Government contract case. As the plaintiff demonstrates neither privity of contract nor third-party beneficiary status, the defendant rejects any jurisdictional basis for the contract claim under RCFC 12(b)(1).

Alternatively, in the event that this Court rejects the contract theory as a jurisdictional basis, the plaintiff also claims entitlement to compensation based on a taking theory under the Fifth Amendment of the Constitution. The plaintiff claims that the change of regulation, which prohibited the amortization of goodwill and resulted in the insolvency of First Federal, constituted a taking of the value of the plaintiff's investment. In the instant motion to dismiss, however, the defendant contends that the plaintiff demonstrates no standing to sue for the alleged taking. Specifically, as the plaintiff purchased the subject shares after the enactment of FIRREA and after the effective date of the OTS regulations, the defendant contends that the plaintiff fails one of the basic proof elements for making out a takings case, that being a showing of ownership of the subject property at the time of the taking. The defendant demonstrates that the FIRREA was passed and the regulations which precluded the computation of goodwill as a capital asset became effective before the date on which the plaintiff purchased the subject shares in First Federal: FIRREA became effective on August 9, 1989, and the FIRREA regulations became effective òn December 7, 1989, but the plaintiff purchased his 16,000 shares of First Federal in June of 1990. As such, because the plaintiff acquired the property at issue *after* the effective date of the statute or the regulations (thus, after the taking date), the defendant argues that the plaintiff maintains no standing to sue. In its response, the plaintiff provides little refutation of the defendant's standing argument, other than to allege a taking not from the effective date of FIRREA or its regulations but from the date of the declaration of insolvency of First Federal by the Government on October 16, 1991. Other than this base assertion, the plaintiff merely recites merit ar-

guments, claiming a regulatory taking by the denial of an economically viable use of property by the exclusion of goodwill as an amortizable asset. In its reply, the defendant points to the plaintiff's inadequate factual showing and reiterates the standing argument. Thus, as the plaintiff owned no shares in First Federal at the time of the taking (*i.e.*, at the time of the change in law or at the time of the change of regulations), the defendant rejects any basis for standing under the Fifth Amendment and seeks dismissal under RCFC 12(b)(4).

On May 12, 1994, this Court heard oral argument on the preceding issues. After review of the pleadings and motions as well as after consideration of the arguments, and for the reasons recited by the defendant, this Court grants the defendant's motion to dismiss.

### Discussion

As already indicated, the plaintiff asserts two claims for relief, a contract claim and a taking claim. For the contract claim, the defendant seeks dismissal pursuant to RCFC 12(b)(1) for lack of jurisdiction, and for the taking claim, the defendant seeks dismissal under RCFC 12(b)(4) for lack of standing. This Court considers these two issues seriatim.

### I. Jurisdiction of the Contract Claim under RCFC 12(b)(1)

The defendant (movant) seeks dismissal of the plaintiff's (nonmovant's) contract claim pursuant to Rule 12(b)(1) of the United States Court of Federal Claims. RCFC 12(b)(1). RCFC 12(b)(1) mirrors Rule 12(b)(1) of the Federal Rules of Civil Procedure. FED.R.CIV.P. 12(b)(1). *See Wheeler v. United States*, 11 F.3d 156, 157 n. 1 (Fed.Cir. 1993) ("RCFC 12(b)(1) is identical to Rule 12(b)(1) of the Federal Rules of Civil Procedure."). Rule 12(b)(1) provides for dismissal for "the lack of jurisdiction over the subject matter." FED.R.CIV.P. 12(b)(1). In evaluating a motion to dismiss under Rule 12(b)(1), under the basic application, this Court must construe all allegations of fact to the favor of the nonmovant. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90

(1974); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988); *Hannon v. United States*, 29 Fed.Cl. 142, 149 (1993). Yet, the nonmoving party bears the burden of establishing jurisdiction. *KVOS, Inc. v. Associated Press*, 299 U.S. 269, 278, 57 S.Ct. 197, 200–01, 81 L.Ed. 183 (1936); *Cedars–Sinai Medical Ctr. v. Watkins*, 11 F.3d 1573, 1583 (Fed.Cir.1993); *Flathead Joint Bd. of Control v. United States*, 30 Fed.Cl. 287, 292 (1993). This apparent contradictory requirement, construing all facts favorably to the nonmovant but also placing the burden of proving jurisdiction on the nonmovant, has led to the development of two judicial approaches to a motion to dismiss pursuant to Rule 12(b)(1), including both a majority view and a minority view. *Total Medical Management, Inc. v. United States*, 29 Fed.Cl. 296, 298–301 (1993).

Under the majority approach, courts consider a motion to dismiss under Rule 12(b)(1) construing all facts favorably to the pleader, but, if the movant challenges the facts, allowing an attack upon the facts under the factual attack doctrine. *Reynolds*, 846 F.2d at 747. The Court of Federal Claims explains this doctrine as follows:

> But there are exceptions to the usual Rule 12(b)(1) requirement that the allegations of the complaint be accepted as true. Such exceptions, referred to under the collective rubric of *factual attacks*, exist in cases where a jurisdictional determination on the pleadings alone would be unfair. Such cases might arise where the merits of a case are inextricably interwoven with the facts necessary to establish jurisdiction, or where the truth of the jurisdictional facts is disputed, or where only additional discovery can uncover necessary jurisdictional facts, or where the jurisdictional attack is based on matters outside the pleadings.

*Eastern Trans–Waste v. United States*, 27 Fed.Cl. 146, 148 n. 1 (1992). *See Goolsby v. United States*, 21 Cl.Ct. 629, 631 (1990) ("If the motion involves a factual attack on the complaint's jurisdictional allegations, the court may receive competent evidence to resolve the factual dispute.") (citing *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 1010–11 n. 4, 91 L.Ed. 1209 (1947)). Thus,

under the majority approach, if the movant challenges the pleader's facts, or some other circumstance requires the consideration of the facts, then the favorable presumption for the nonmovant's factual allegations ends. In *Mark Smith Constr. Co. v. United States,* 10 Cl.Ct. 540 (1986), the United States Claims Court explained:

> In a factual attack on jurisdiction, we are not required to, and 'thus do not, consider plaintiff's allegations as true for purposes of the defendant's motion as would be in the case of a motion for summary judgment. Rather, we are obliged to look beyond the pleadings and decide *for ourselves* those facts, even if in dispute, which are necessary for a determination of the jurisdictional merits of defendant's motion. We are constrained to so proceed because "the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."

*Id.* at 541 n. 1 (citations omitted). *See, e.g., Burgess v. United States,* 20 Cl.Ct. 701, 703 (1990); *Cubic Corp. v. United States,* 20 Cl. Ct. 610, 616 (1990); *Raymark Indus. v. United States,* 15 Cl.Ct. 334, 335 (1988); *Wall Indus., Inc. v. United States,* 10 Cl.Ct. 82, 87 (1986); *LaMear v. United States,* 9 Cl.Ct. 562, 569, *aff'd without op.,* 809 F.2d 789 (Fed.Cir.1986).

Under the minority approach, the application of a dismissal under Rule 12(b)(1) occurs only upon the failure to *plead* (not prove) a basis of subject matter jurisdiction. *Total Medical,* 29 Fed.Cl. at 298–99; *Eastern Trans–Waste,* 27 Fed.Cl. at 150. *But see KDH Corp. v. United States,* 23 Cl.Ct. 34, 37 (1991) ("In order to establish jurisdiction in the Claims Court, a claimant must *plead and prove* that it has the capacity to file suit.") (emphasis added). The minority approach relies upon the quality of the pleading under the "well-pleaded complaint rule." *See Total Medical,* 29 Fed.Cl. at 299 ("So long as a contract has been properly alleged, * * * jurisdiction will generally exist."). Thus, if the nonmovant proffers a contract as the basis of jurisdiction, then that act alone (whether accurate or erroneous) fulfills the requirements of subject matter jurisdiction,

and any motion for dismissal under Rule 12(b)(1) must fail. *See id.* ("[I]t [is] virtually impossible to grant a motion to dismiss for lack of jurisdiction under Rule 12(b)(1) if the motion is predicated on a challenge to the existence of a properly alleged contract."). This strict pleading requirement also emerges from the requirement that a court construe all facts to the favor of the pleader. *See id.* at 298 ("[Q]uestions of law, like issues of fact, can only 'be decided after and not before the court has assumed jurisdiction.'") (citations omitted). So, if any challenge exists to the pleadings, the minority approach considers such questions of fact as inappropriate for resolution under a Rule 12(b)(1) consideration.

At least one panel of the United States Court of Appeals for the Federal Circuit has also approved the minority approach to Rule 12(b)(1). In *Spruill v. Merit Sys. Protection Bd.,* 978 F.2d 679, 686–87 (Fed.Cir.), *reh'g, en banc, denied,* (Fed.Cir. Dec. 21, 1992), the Federal Circuit described the rationale for the adoption of this new approach:

> To the extent a successful claim against the government requires compliance with all statutory elements of the claim, failure of proof of an element of the cause of action means the petitioner is not entitled to the relief he seeks. To conclude in such a case that the petitioner loses because the forum is "without jurisdiction" [under RCFC 12(b)(1) ] is to obscure the nature of the defect. It would be more accurate to conclude that the petitioner has failed to prove the necessary elements of a cause for which relief could be granted [under RCFC 12(b)(4) ]. The forum had jurisdiction to hear the matter in the first instance—that is, subject-matter jurisdiction existed—as long as the petitioner asserted nonfrivolous claims.

*Id.* at 687–88. As recited by this panel of the Federal Circuit, the application of Rule 12(b)(1) under the minority approach depends predominently upon the quality of the pleading. Therefore, in the face of a well-pleaded complaint, the movant must move under RCFC 12(b)(4) for the failure to state a claim upon which relief may be granted if the movant challenges the factual or legal

basis of the complaint. *See id.* at 687 (" '[I]f the plaintiff really makes a substantial claim under an act of Congress there is jurisdiction whether the claim ultimately be held good or bad.' ") (citations omitted). Thus, under this approach, Rule 12(b)(1) regards the failure to plead jurisdiction whereas RCFC 12(b)(4) regards the failure to prove jurisdiction. This distinction, moreover, regards more than mere technicalities or semantics. Indeed, the panel highlights the significance of the distinction of disposition between these rules as follows:

> Confusion may arise when the factual allegations that constitute the cause of action include allegations which are necessary to establish jurisdiction. While the practical result of a dismissal for want of jurisdiction [pursuant to RCFC 12(b)(1) ] may in some cases be the same as a dismissal for failure to state a claim [pursuant to RCFC 12(b)(4) ], the legal consequences can be substantially different.[10]

---

[10] The application of the principle of *res judicata* is just one example. The issue in this case is another.

*Id.* at 687, n. 10. Therefore, the advocates of the minority approach not only suggest a more consistent analytical approach to dismissal between RCFC 12(b)(1) and RCFC 12(b)(4), but also enable a more efficient means of judicial administration. In contrast to dismissal under RCFC 12(b)(1), dismissal under RCFC 12(b)(4) constitutes a final disposition.

Not surprisingly, in applying the foregoing two approaches to the case at bar, this Court finds that each approach requires a different resolution as to the pending motion. Under the majority approach, this Court may consider the defendant's motion to dismiss the contract claim under Rule 12(b)(1) even though the movant challenges the nonmovant's plea of contract jurisdiction as a third-party beneficiary. Under the minority approach, however, this Court must deny the movant's motion to dismiss under Rule 12(b)(1) because the movant challenges the factual allegations of the nonmovant as to third-party beneficiary status. Further, in at least one decision applying the minority approach, the Court of Federal Claims has found dismissal under RCFC 12(b)(1) improper in circumstances similar to those here. *See Eastern Trans–Waste,* 27 Fed.Cl. at 150 ("The existence of privity of contract is a merits question which cannot be addressed by a Rule 12(b)(1) motion attacking the sufficiency of the complaint."). In view of this disparity, this Court must choose either the majority or minority approach to RCFC 12(b)(1).

In so doing, while this Court recognizes that the advocates of the minority approach maintain compelling grounds for this new scheme in the application of dismissals under RCFC 12(b)(1) and RCFC 12(b)(4), this Court remains obliged to follow the precedent of the *en banc* rulings of the United States Court of Appeals for the Federal Circuit where panel decisions of that court diverge. *Messerschmidt v. United States,* 29 Fed.Cl. 1, 61, *aff'd without op.,* 14 F.3d 613 (Fed.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1382, 128 L.Ed.2d 57 (1994). Indeed, in the panel decision of the Federal Circuit recited above for the application of the minority approach, the panel acknowledges an *en banc* decision of the Federal Circuit which applies the *majority approach.* *Spruill,* 978 F.2d at 688 (citing *Cruz v. Department of Navy,* 934 F.2d 1240, 1247 (Fed. Cir.1991) (*en banc* )). In such circumstances, pursuant to *South Corp. v. United States,* 690 F.2d 1368, 1370 (Fed.Cir.1982), this Court maintains no discretion to apply any law in conflict with that as recited by the binding precedent of the United States Court of Claims, the United States Court of Customs and Patent Appeals, or the *en banc* rulings of the Federal Circuit. Accordingly, in reviewing the defendant's instant motion to dismiss pursuant to Rule 12(b)(1), this Court applies the majority approach.

### A. *Privity of Contract as a Jurisdictional Basis*

No jurisdiction exists in this Court absent the waiver of sovereign immunity by the United States. *United States v. Mitchell,* 445 U.S. 535, 538, 100 S.Ct. 1349, 1351–52, 63 L.Ed.2d 607 (1980); *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–

54, 47 L.Ed.2d 114 (1976). In one such statutory waiver, the Tucker Act authorizes jurisdiction over "any claim against the United States founded * * * upon * * * any express or implied contract with the United States * * *." 28 U.S.C. § 1491(a)(1) (1988). As a contingency of such jurisdiction under the Tucker Act, however, this Court has consistently found privity of contract to be a jurisdictional prerequisite.[2] *Erickson Air Crane Co. v. United States,* 731 F.2d 810, 813 (Fed.Cir.1984); *Continental Ill. Nat'l Bank & Trust Co. v. United States,* 112 Ct.Cl. 563, 566, 81 F.Supp. 596, 598 (1949); *Thomas Funding Corp. v. United States,* 15 Cl.Ct. 495, 499 (1988). Privity of contract encompasses a contractual relationship between the claimant and the Government. *Camellia Apartments, Inc. v. United States,* 167 Ct.Cl. 224, 226, 334 F.2d 667, 669 (1964), *cert. denied,* 379 U.S. 963, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965); *California Sand & Gravel, Inc. v. United States,* 22 Cl.Ct. 19, 22 (1990), *aff'd without op.,* 937 F.2d 624 (Fed.Cir.1991). Therefore, absent a showing of either privity of contract or demonstration of an exception to the privity requirement, no jurisdiction exists to pursue a contract claim in this Court.[3]

### B. *Third–Party Beneficiary Status as an Exception to the Privity of Contract Rule*

To rebut the defendant's allegations of lack of jurisdiction for the lack of privity of contract, the plaintiff argues that this Court has jurisdiction over this case because the plaintiff is a third-party beneficiary of the contract between the FSLIC and First Federal. Thus, citing *Etchey v. United States,* 15 Cl.Ct. 152 (1988), the plaintiff claims a third-party beneficiary exception to the privity requirement. In *Etchey,* the United States Claims Court recognized a third-party beneficiary exception under the following two-part standard:

> [T]he courts have permitted suits by a person who, though not a party to a Government contract, was a third-party beneficiary of the contract, in situations where the contract specifically "reflect[ed] the intent not merely to benefit the third-party but also to give him the direct right to compensation or to enforce that right against the promisor."

*Id.* at 153 n. 1 (quoting *Baudier Marine Elecs., Sales & Serv., Inc. v. United States,* 6 Cl.Ct. 246, 249 (1984)). *See, e.g., Clean Giant, Inc. v. United States,* 19 Cl.Ct. 390, 394 (1990); *Ward–Schmid Co. v. United States,* 18 Cl.Ct. 572, 575 n. 3 (1989). Apparently relying on *Etchey,* the plaintiff then cites the affidavit of Mr. Michael, Executive Vice President of First Federal, who affirms that First Federal intended that the contract with the FSLIC benefit the shareholders of First Federal. Other than citation to this affidavit,[4] however, pursuant to *Etchey,* the plain-

---

**2.** The advocates of the minority approach to Rule 12(b)(1) also criticize the requirement of privity of contract as a "prerequisite" to jurisdiction in this Court. *See Total Medical,* 29 Fed.Cl. at 301 ("[T]o require that the existence of a contract be decided before jurisdiction is assumed * * * seems strained and ignores the well-pleaded complaint rule as well as the uncomfortable reality that the court must often resolve disputed facts to determine whether a contract exists."). Again, however, absent an *en banc* ruling by the Federal Circuit, the Court of Federal Claims must continue these requirements as established by the Court of Claims. *See Thompson Tower Ltd. Dividend Housing Ass'n v. United States,* 228 Ct.Cl. 766, 771, 1981 WL 21478 (1981) ("Congress has not given this court jurisdiction over suits on contracts where there is no privity between the plaintiff and the Government.").

**3.** Unfortunately, some decisions reciting the privity requirement equate the lack of privity with the lack of standing. *See, e.g., Federal Ins. Co. v. United States,* 29 Fed.Cl. 302, 302 (1993). As regarded by this Court, however, privity of contract implicates jurisdiction whereas standing implicates justiciability, and a court maintains no authority to consider the presence of a case or controversy if no jurisdiction enables the Court to proceed to the merits of the case. *See generally* Laura A. Smith, *Justiciability and Judicial Discretion: Standing at the Forefront of Judicial Abdication,* 61 Geo.Wash.L.Rev. 1548, 1548–49 (1993) (distinguishing jurisdiction from justiciability).

**4.** At the oral hearing, the plaintiff also introduced a second document which the plaintiff contended demonstrated an intent to benefit the shareholders of First Federal. This document comprised a contract executed between Citizens Federal Savings and Loan (Old Citizens) and Citizens Federal Savings Bank (New Citizens), both of Jacksonville, Florida. *See* Merger Agree-

tiff makes no showing that the contract intended a benefit to or that the contract contemplated a direct right of compensation or enforcement to the shareholders of First Federal. In fact, other than mere citation to this case and reference to the noted affidavit, the plaintiff makes no other factual or legal showing. For this factual deficiency alone, this Court finds that the plaintiff fails to maintain its burden of proof required to demonstrate jurisdiction. Yet, as the defendant makes such a strong showing on defeating the plaintiff's claim to third-party beneficiary status, this Court reviews the defendant's arguments.

To avoid the privity requirement and demonstrate jurisdiction in this Court, a claimant may assert the status of a third-party beneficiary. *Blaze Constr. v. United States,* 27 Fed.Cl. 646, 651 (1993). "To entitle one to sue as a third-party beneficiary of a contract to which he is not a party, the contract must reflect the intent not merely to benefit the third-party but also to give him the direct right to compensation or to enforce that right against the promisor." *Baudier Marine Elecs., Sales & Serv., Inc. v. United States,* 6 Cl.Ct. 246, 249 (1984) (citing *German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912)), *aff'd without op.,* 765 F.2d 163 (Fed. Cir.1985). To satisfy the requirements for this status, however, the claimant maintains a onerous burden of proof:

> A plaintiff who would allege third party status sufficient to ground jurisdiction here must demonstrate more than that he merely benefits from a contract to which he is not a party. *Penn Towne Builders, Inc. v. United States,* 4 Cl.Ct. 677, 682 (1984). Plaintiff must show "that the express or

implied intention of any other parties to [the agreement] * * * was to benefit *plaintiff* " specifically. *Id.* (emphasis in original); *see Busby* [*School of Northern Cheyenne Tribe v. United States* ], 8 Cl.Ct. [596,] at 602 [ [ (1985) ]; *Ables v. United States,* 2 Cl.Ct. 494, 500 (1983), *aff'd without opinion,* 732 F.2d 166 (Fed.Cir.1984). The contract must also reflect the intention of the parties to give the claimant "the direct right to compensation or to enforce that right against the promisor." *Baudier Marine Electronics v. United States,* 6 Cl.Ct. 246, 249 (1984), *aff'd without opinion,* 765 F.2d 163 (Fed.Cir.1985) (citing *German Alliance Ins. Co. v. Home Water Supply Co.,* 226 U.S. 220[, 33 S.Ct. 32, 57 L.Ed. 195] (1912)).

*Erikson v. United States,* 12 Cl.Ct. 754, 757 (1987). Thus, to determine these requirements, a court looks to the agreement proffered to support the third-party beneficiary argument: whether the contract demonstrates the requisite intent or not thus establishes if the party may maintain a third-party beneficiary status. Furthermore, in contrast to the two-part standard proffered by the plaintiff, which suggests satisfaction of the intent requirements by *either* party, the standard of proof for third-party beneficiary status requires satisfaction of the proof elements as to *both* parties to the contract. *Baudier,* 6 Cl.Ct. at 249.

■ Whether a claimant proves the satisfaction of these intent requirements by both parties depends on the standards applied to satisfy third-party beneficiary status. In the instant case, both parties apparently agree that the standard for third-party beneficiary status maintains two elements. Indeed, the

ment and Plan of Merger among Citizens Federal Savings and Loan and Citizens Federal Savings Bank (Sept. 1, 1988). In the recital of rights, the contract specified: "It is deemed to be in the best interests of *the members of OLD CITIZENS and the stockholder of NEW CITIZENS* that such associations effect a merger upon the terms and conditions stated in this Agreement." *Id.* § 2, at 1 (emphasis added). Citing this provision, the plaintiff asserts that this contract suggests an intent to benefit not only First Federal as an entity, which later acquired New Citizens, but also the shareholders of First Federal. However, the contract neither expresses nor implies such a

reading. In fact, in the section reciting "Sole Benefit," the contract expressly refutes the reading proffered by the plaintiff: "Nothing expressed or referred to in this Agreement is intended or shall be construed to give any person other than the RESULTING ASSOCIATION or the MERGING ASSOCIATION any legal or equitable right, remedy, or claim under, or in respect to, this Agreement or any of its provisions, * * *." *Id.* § 16, at 7. Therefore, for the forgoing reasons, this Court finds absolutely no basis in the plaintiff's strained attempt to allocate an intent to benefit the shareholders of First Federal from this document.

defendant emphasizes this two-part standard: (1) the plaintiff must show that both parties either expressly or impliedly intended that the contract benefit the party claiming third-party beneficiary status, and (2) the plaintiff must show that both parties granted the purported third-party beneficiary the direct right to compensation or the right to enforce the contract against the Government. Defendant's Reply, at 2. In contrast to this recitation of the standard, as an integrated contract constitutes the sole basis of the plaintiff's claim of third-party beneficiary status, this Court finds the standard voiced in *Baudier* as more appropriate:

> To entitle one to sue as a third-party beneficiary of a contract to which he is not a party, *the contract must reflect* the intent not merely to benefit the third-party but also to give him the direct right to compensation or to enforce that right against the promisor.

*Baudier*, 6 Cl.Ct. at 249 (citing *German Alliance Ins. Co. v. Home Water Supply Co.*, 226 U.S. 220, 230, 33 S.Ct. 32, 35, 57 L.Ed. 195 (1912)) (emphasis added). Thus, in contrast to the standard recited by the defendant which construes the intent of the parties disputing third-party beneficiary status, the *Baudier* standard relies strictly on the terms of the contract. *See, e.g., Aerolineas Argentinas v. United States*, 31 Fed.Cl. 25, 36–37 (1994); *Thomas Funding Corp.*, 15 Cl.Ct. at 500.

In view of the recent finding in *Schuerman v. United States*, 30 Fed.Cl. 420 (1994), however, this Court questions whether in fact the proper standard entails one or two elements. In *Schuerman*, the Court of Federal Claims makes an extensive review of the law regarding jurisdiction as a third-party beneficiary in this Court. Upon an independent review of the dual standard as recited in *Baudier*, the court found the application of the second component as error, absent the allegation of third-party beneficiary status for a contract benefiting the public at large. *Id.* at 429. *See Orchards v. United States*, 4 Cl.Ct. 601, 609–12 (applying the two-part standard with regard to a contract benefiting an irrigation district, thus a benefit to the public at large), *aff'd*, 749 F.2d 1571 (Fed.Cir.1984), *cert. de-*

*nied*, 474 U.S. 818, 106 S.Ct. 64, 88 L.Ed.2d 52 (1985). The court explained:

> [S]ection 313 of the Restatement, requires direct evidence in the contract that the contracting parties intended to give the third party an enforceable right to sue. Such a requirement addresses the general concern * * * [of] multitudinous suits against the Government concerning * * * breach of a contract that was intended to benefit the public at large, as opposed to a specific individual.
>
> *        *        *        *        *        *
>
> [T]he second prong of *Baudier* requires that "[t]he contract must reflect the intention of the parties to give the claimant 'the direct right to compensation or to enforce that right against the promisor.'" *Blaze Constr.*, 27 Fed.Cl. at 652 (quoting *Baudier*, 6 Cl.Ct. at 249). This requirement mimics section 313 of the Restatement. Reliance on this section of the Restatement, however, was inappropriate. The scope of section 313 is limited and applies only to suits for consequential damages against "*promisor[s] who contract with a government* or governmental agency ... [to] render a service to the public." (Emphasis added.)

*Schuerman*, 30 Fed.Cl. at 429. Therefore, unless a contract benefits the public at large, the court in *Schuerman* rejected application of the second prong of the two-part standard. *See id.* at 430 ("For purposes of determining whether a party qualifies as a third-party beneficiary, a court should focus its inquiry upon only the first prong * * *.").

While this Court finds favor with the analysis and conclusions presented in *Schuerman*, the plaintiff presents this Court with no facts by which to apply either the singular standard of *Schuerman* or the two-part standard of *Baudier*. The only evidence presented regards the subjective intent of one of the shareholders of First Federal. Further, this Court finds no credible evidence that *both* contracting parties intended a benefit to the shareholders of First Federal. In fact, the only contract proffered proves the contrary. At section twenty-three of the Assumption Agreement, the very document under which the plaintiff claims third-party beneficiary

status, the contract specifically excludes benefit to any third-party:

> § 23 *Sole Benefit.* It is the intention of the parties that this Agreement, the assumption of obligations and statements of responsibilities under it, and all of its conditions and provisions are for the sole benefit of the parties hereto and for the benefit of no other person. Nothing expressed or referred to in this Agreement is intended or shall be construed to give any person other than the parties hereto any legal or equitable right, remedy, or claim under, or in respect to, this Agreement or any of its provisions.

Assumption Agreement § 23, at 44–45. Thus, as the plaintiff fails the first component of the two-part standard, this Court need not decide at this time whether to adopt the conclusions of *Schuerman* and apply or reject the second component of the standard. For, the conclusion remains certain that the plaintiff presents insufficient evidence to prove third-party beneficiary status, and therefore, maintains neither factual nor legal basis for the assertion of jurisdiction in this Court.

As the plaintiff maintains no jurisdiction to sue for this contract claim, this Court grants the defendant's motion to dismiss pursuant to RCFC 12(b)(1).

## II. Standing under RCFC 12(b)(4)

In response to the plaintiff's taking claim, the defendant also seeks dismissal of the claim pursuant to Rule 12(b)(4) of the United States Court of Federal Claims. RCFC 12(b)(4). RCFC 12(b)(4) mirrors Rule 12(b)(6) of the Federal Rules of Civil Procedure. FED.R.CIV.P. 12(b)(6). *Wheeler v. United States,* 11 F.3d 156, 158 n. 4 (Fed.Cir. 1993); *Booth v. United States,* 990 F.2d 617, 619 n. 3 (Fed.Cir.1993); *J.M. Huber Corp. v. United States,* 27 Fed.Cl. 659, 661 (1993). RCFC 12(b)(4) or Rule 12(b)(6) allows a motion to dismiss for the "failure to state a claim upon which relief can be granted."

RCFC 12(b)(4); FED.R.CIV.P. 12(b)(6). These rules allow the dismissal of actions that are "fatally flawed in their legal premises and destined to fail, * * * spar[ing] litigants the burdens of unnecessary pretrial and trial activity." *Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc.,* 988 F.2d 1157, 1160 (Fed.Cir.1993) (citing *Neitzke v. Williams,* 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832–33, 104 L.Ed.2d 338 (1989)). A motion pursuant to RCFC 12(b)(4) or Rule 12(b)(6), however, requires denial by a court " 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)).

A ruling under RCFC 12(b)(4) or Rule 12(b)(6) constitutes an adjudication on the merits. *L.E. Cooke Corp. v. United States,* 27 Fed.Cl. 753, 755 (1993); *Brahms v. United States,* 18 Cl.Ct. 471, 473 (1989); *Hedman v. United States,* 15 Cl.Ct. 304, 306 (1988). Additionally, as noted by the Rules of this Court, if a party presents matters outside the pleadings, a dismissal under RCFC 12(b)(4) constitutes a finding by summary judgment:

> If, on a motion asserting the defense numbered (4) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

RCFC 12(b). *See, e.g., Moehl v. United States,* 29 Fed.Cl. 249, 250 n. 1 (1993); *City of Tacoma v. United States,* 28 Fed.Cl. 637, 642 (1993); *Tecom Indus., Inc. v. United States,* 24 Cl.Ct. 611, 613 (1991). Here, however, as neither party presents matter outside of the pleadings regarding the takings issue,[5] this Court regards the instant motion

---

5. The court maintains the discretion whether or not to receive matters outside of the pleadings in a motion to dismiss under RCFC 12(b)(4). 2A JAMES W. MOORE & JO D. LUCAS, MOORE'S FEDERAL PRACTICE § 12.09[3], at 12–106 (2d ed. 1994). Of course, the brief or other memoranda in support of or in opposition to the motion to dismiss contrasts from that "outside the pleading." *Id.* at 12–107. In view of the absence of factual evidence proffered by the plaintiff in support of

not under RCFC 56 but under RCFC 12(b)(4).

Dismissal under RCFC 12(b)(4) implicates whether the plaintiff has presented a justiciable issue before the Court, that is, whether the claimant proffers a case or controversy for which the United States has waived sovereign immunity. *Booth v. United States,* 990 F.2d 617, 619 (Fed.Cir.1993); *Solitron Devices, Inc. v. United States,* 210 Ct.Cl. 352, 367, 537 F.2d 417, 426 (1976), *cert. denied,* 430 U.S. 930, 97 S.Ct. 1548, 51 L.Ed.2d 773 (1977); *American Maritime Transp., Inc. v. United States,* 18 Cl.Ct. 283, 291 (1989). The case or controversy requirement implicates a number of analyses, including the standing requirement, that is, whether the plaintiff constitutes the type of person or party that may submit the case or controversy proffered for consideration. *BP Chems. v. Union Carbide Corp.,* 4 F.3d 975, 981 (Fed.Cir. 1993); *Hannibal Cundari v. United States,* 224 Ct.Cl. 607, 608, 650 F.2d 287 (1980); *see generally Longhofer v. United States,* 29 Fed.Cl. 595, 603–04 (1993). Although in the Article III context, the United States Court of Appeals for the Federal Circuit has described the standing requirement as follows:

> To establish standing to sue, as Article III § 2 has been interpreted, a party must, "at an irreducible minimum," show (1) "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct" (personal injury), (2) that "the injury 'fairly can be traced to the challenged action'" (causation), and (3) that the injury "is likely too be redressed by a favorable decision" (effective relief). *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, [758–59,] 70 L.Ed.2d 700 (1982) [citation omitted].

*Animal Legal Defense Fund v. Quigg,* 932 F.2d 920, 925 (Fed.Cir.1991). The United States Court of Federal Claims, an Article I court, applies the same standing requirement as the Article III courts. *American Maritime Transp.,* 18 Cl.Ct. at 290. In the case at bar, the defendant seeks dismissal under RCFC 12(b)(4) based on an alleged lack of standing.

■ Pursuant to a taking claim under the Fifth Amendment, a plaintiff must initially show standing, including proof of personal injury, that is, the requisite interest in the property at issue and the deprivation thereof by the United States. *Shanghai Power Co. v. United States,* 4 Cl.Ct. 237, 239–40 (1983), *aff'd without op.,* 765 F.2d 159 (Fed.Cir.), *cert. denied,* 474 U.S. 909, 106 S.Ct. 279, 88 L.Ed.2d 243 (1985); *Smith v. United States,* 28 Fed.Cl. 430, 436 (1993), *aff'd,* No. 93–5151, 1994 WL 32660, 1994 U.S.App. LEXIS 2384 (Fed.Cir. Feb. 7, 1994); *Illinois v. United States,* 15 Cl.Ct. 399, 410 (1988). Accordingly, to demonstrate the "requisite interest in the property at issue," the plaintiff must demonstrate ownership of the property at the time of the taking. *Cavin v. United States,* 19 Cl.Ct. 190, 197 n. 4 (1989), *aff'd in part and rev'd in part,* 956 F.2d 1131 (Fed. Cir.1992). *See United States v. Dow,* 357 U.S. 17, 22, 78 S.Ct. 1039, 1044–45, 2 L.Ed.2d 1109 (1958) (declaring that only the owner of property at the time of taking, and not before or thereafter, may claim and receive payment for a taking). If the plaintiff fails to establish this most basic requirement of the personal injury component of the standing analysis, a court need not progress to the other considerations of standing. *See, e.g., Fixel v. United States,* 26 Cl.Ct. 353, 356 (1992); *Oak Forest, Inc. v. United States,* 23 Cl.Ct. 90, 94 (1991); *Richards v. United States,* 20 Cl.Ct. 753, 757 (1990). In the instant case, the defendant contends that the plaintiff lacked ownership of the shares at issue at the time of the alleged taking and consequently lacks standing to sue under the Fifth Amendment.

demonstrating standing for the instant claim, moreover, this Court finds nothing "outside the pleading" on which to require a conversion of the instant motion to that of summary judgment. *See id.* at 12–107 n. 6. ("What constitutes 'matters outside the pleading' as stated in Rule 12(b) is perhaps not as simple a question as it would at first appear. Certainly any of the evidentiary materials that are typically submitted in conjunction with a motion for summary judgment, such as affidavits, exhibits, depositions, admissions, answers to interrogatories, and the like should be considered to be 'outside the pleading.'") (citations omitted).

In order to withstand a motion to dismiss pursuant to RCFC 12(b)(4), a plaintiff must allege facts, which if proven, would show entitlement to relief as a matter of law. *Howard v. United States,* 21 Cl.Ct. 475, 477 (1990) (citing *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)); *Chavez v. United States,* 15 Cl.Ct. 353, 356 (1988). In the instant case, the defendant asserts that the plaintiff maintains no standing for a takings claim in this Court. Consequently, the Court must consider the plaintiff showing on this matter. Specifically, to rebut the defendant's allegations of lack of standing based on the lack of ownership of the property at issue at the time of the alleged taking, the plaintiff challenges the defendant's placement of the date of taking as on the date of enactment of the FIRREA statute (August 9, 1989) or issuance of the FIRREA regulations (December 7, 1989). Indeed, the plaintiff claims that the taking occurred upon the declaration of insolvency of First Federal by the OTS on October 16, 1991, more than one year after the date of purchase of his shares at issue (June, 1990). To support this position, however, the plaintiff only references merit arguments and presents no factual or legal basis for placement of the date of taking on the date of default. Therefore, for this factual deficiency of proof, this Court finds that the plaintiff fails the burden of demonstrating a claim upon which relief may be granted. Accordingly, this Court finds the defendant's motion to dismiss appropriate solely on the plaintiff's failure of the burden.

Nevertheless, on the merits of the plaintiff's claim, the defendant notes specific authority for the allocation of a taking upon the date of passage of a law or promulgation of regulations and not the date on which the application thereof became pronounced on persons affected by such law or regulations. As referenced by the defendant, in *Whitney Benefits, Inc. v. United States,* 18 Cl.Ct. 394, 406–07 (1989), *op. corrected,* 20 Cl.Ct. 324 (1990), *aff'd,* 926 F.2d 1169 (Fed.Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 406, 116 L.Ed.2d 354 (1991), the Claims Court considered the effect of an environmental statute, along with its implementing regulations, which resulted in the denial of a mining permit upon a coal mining company. Specifically, the parties disputed the time of the taking. The plaintiff claimed a taking from the passage of the statute, and the Government claimed a taking from the date of denial of the mining permit (*i.e.,* the date on which the statute became pronounced on the mining company). Finding for the plaintiff in that circumstance, the Claims Court found that the taking occurred on the date of the enactment of the environmental statute. *Id.* at 407. Similarly, in the instant case, the defendant suggests that the taking occurred either upon the enactment of FIRREA or the issuance of the FIRREA regulations and not upon the finding of insolvency of First Federal, and this Court so finds. Surprisingly, the plaintiff presents no evidence to contradict the defendant's position and, again, fails the burden of proof on the issue of standing for the takings claim. Further, for the reasons cited by the defendant, as described above, this Court agrees that the plaintiff maintained no ownership of shares in First Federal at the time of the taking. As the plaintiff owned no shares of the subject stock on the date of the taking, therefore, the plaintiff maintains no standing to sue.

As the plaintiff maintains no standing to sue for this takings claim, this Court grants the defendant's motion to dismiss pursuant to RCFC 12(b)(4).

## CONCLUSION

As the plaintiff presents neither factual nor legal grounds for his alleged third-party beneficiary status as it pertains to his contract claim, this Court finds that the plaintiff has failed to demonstrate a basis of subject matter jurisdiction pursuant to Rule 12(b)(1) of the United States Court of Federal Claims. Therefore, the plaintiff's contract claim is dismissed for lack of jurisdiction. Furthermore, as the plaintiff presents neither factual nor legal support for the allegation of standing with regard to his takings claim, this Court similarly finds that the plaintiff has failed to state a claim on which relief may be granted pursuant to Rule 12(b)(4) of the United States Court of Federal Claims. Therefore, the plaintiff's takings

claim must also be dismissed. Accordingly, this Court grants the defendant's motion to dismiss, and the plaintiff's complaint will be dismissed.