Frank P. SLATTERY, Jr.,
et al., Plaintiffs,

v.

The UNITED STATES, Defendant.

No. 93–280C.

United States Court of Federal Claims.

March 14, 1996.

Thomas M. Buchanan, Winston & Strawn, Washington, D.C., for plaintiffs. Eric W. Bloom, Winston & Strawn, Washington, D.C. was of counsel.

Richard E. Rice, Washington, D.C., with whom were David M. Cohen, Director, Commercial Litigation Branch, Civil Division, and Frank W. Hunger, Assistant Attorney General, United States Department of Justice, for defendant. Thomas A. Schulz, Robert G. Clark, and Thomas L. Holzman, Federal Deposit Insurance Corporation, Washington, D.C., were of counsel.

## OPINION

SMITH, Chief Judge.

This case is currently before the court on the defendant's motion to dismiss or, in the alternative, for summary judgment. This motion is based on three arguments: (1) that this court has no jurisdiction over plaintiffs' claims; (2) that plaintiffs do not have the requisite standing to bring their claims; and (3) that even if the FDIC discounted Meritor's goodwill when making its minimum capital calculations, it was within its contractual rights to do so. On March 17, 1995, the court issued an order stating that based upon the court's decision in *Suess v. United States,* 33 Fed.Cl. 89 (1995), the government's motion is denied insofar as it is based on the argument that the court has no jurisdiction over derivative suits such as that brought by the plaintiffs. For the reasons discussed below, the court hereby rejects defendant's remaining arguments and denies the balance of its dispositive motion.

## FACTS

Plaintiffs brought this suit both as a shareholder derivative action and as a class action on behalf of all individuals who were shareholders of Meritor Savings Bank (Meritor) as of December 11, 1992. The basis of their claim is that by issuing a Notification of Findings (the Notification) to the Pennsylvania Department of Banking (PDB) which stated, *inter alia,* that Meritor was operating with insufficient capital, the FDIC breached a prior contract with Meritor's predecessor-in-interest, the Philadelphia Saving Fund Society (PSFS).

In 1982, PSFS, in response to solicitations by the FDIC, agreed to acquire Western Savings Fund Society of Philadelphia (Western), an insolvent savings bank, in an FDIC-assisted merger. One of the key conditions of the acquisition was the FDIC's agreement that the difference between Western's assets and liabilities, to be assumed by PSFS, would be treated as "goodwill," an intangible asset, and amortized on a straight-line basis over 15

years.[1] This condition, as well as the general method of calculation of plaintiffs' payments, was expressed in a Memorandum of Understanding executed at the same time as, and incorporated into, the 1982 Merger Assistance Agreement (1982 Agreement) between PSFS and the FDIC.

On April 5, 1991, Meritor[2] entered into a written agreement (1991 Agreement) with the Pennsylvania Department of Banking (PDB) and the FDIC, under which Meritor agreed to maintain certain minimum capital levels. At this time, the parties reaffirmed the 1982 Agreement with respect to the treatment of goodwill as a regulatory capital asset. The government contends that this second agreement was prompted by the "troubled condition of Meritor." Def.Mot. at 4.

The alleged breach of contract occurred on December 9, 1992, when the FDIC issued findings regarding Meritor's capital calculations—allegedly excluding or discounting the existence of $253 million of goodwill contrary to the 1982 agreement—to the PDB, and concluded Meritor was operating without sufficient capital.[3] Subsequently, the PDB closed Meritor and appointed the FDIC as receiver. Plaintiffs claim that this discounting of goodwill caused the seizure of Meritor and the consequent devaluation of the institution's stock.

## PROCEDURAL HISTORY

On September 3, 1993, the court stayed proceedings in this case pending further action from the United States Court of Appeals for the Federal Circuit in *Winstar v. United States*, No. 90–8C. Plaintiffs requested that the stay be lifted, arguing that regardless of the eventual outcome in *Winstar*, their claim would survive. Plaintiffs cited several distinctions between the two cases to support their request. First, plaintiffs argued that because Meritor was a savings bank rather than a savings and loan, FIRREA is inapplicable in the instant case. Second, plaintiffs alleged that it was the FDIC, *not* Congress, that breached agreements with Meritor concerning the treatment of supervisory goodwill, thus rendering the Sovereign Acts Doctrine not an issue. Lastly, plaintiffs contend that their contract—unlike that at issue in *Winstar*—does not contain an "unlawful action" clause so that it cannot be argued that plaintiffs assumed the risk that the law would change.

After two hearings on this issue the court denied plaintiffs' request to lift the complete stay, in part because government counsel believed the case was ripe for a dispositive motion. The court allowed the government to file its motion. Plaintiffs' then filed a motion to take limited discovery in order to properly respond to the dispositive motion. Plaintiffs argued that because discovery had been stayed, they could not properly defend against the third basis of defendant's motion.[4] The court was inclined to grant plaintiffs' motion to take limited discovery. The

---

1. As the court stated in its opinion in *Winstar v. United States*, 21 Cl.Ct. 112 (1990), the term "goodwill" is an economic concept associated with the purchase method of accounting:

   Under [the purchase method of accounting] ... the book value of the acquired thrift's assets and liabilities was adjusted to fair market value at the time of the acquisition. Any excess in the cost of the acquisition (which included liabilities assumed by the acquirer) over the fair market value of the acquired assets was separately recorded on the acquirer's books as 'goodwill.' In other words, the government agreed to allow the plaintiffs and others in similar circumstances to treat what was a deficit in capital as an asset. Goodwill was considered an intangible asset that could be amortized on a straight-line basis over a number of years.

   21 Cl.Ct. at 113.

2. PSFS changed its name to Meritor in 1986.

3. The FDIC took this action in light of the Federal Deposit Insurance Corporation Improvement Act (FDICIA) which tightened capital requirements for savings banks although not explicitly addressing the issue of supervisory goodwill. Nonetheless, plaintiffs argued—and defendant conceded—that FDICIA did not become effective until December 19, 1992—ten days after the FDIC's action that constitutes the alleged breach.

4. Plaintiffs sought to stay defendant's motion, and lift the stay on discovery with regards to two basic issues: (1) Whether the FDIC excluded or discounted goodwill in its calculations of Meritor's regulatory capital; and (2) Whether the seizure of Meritor was the result of the institution's $253 million in goodwill. Plaintiffs argued this discovery was necessary to respond to defendant's factual assertions in its motion.

government, however, asked that it be allowed to supplement its filings to detail its objections regarding the discovery requests. It filed a "motion for leave to file a supplement to defendant's motion for summary judgment" in which it restated its general objection to any discovery. In this document the government conceded for the purpose of their dispositive motion that goodwill was not counted. The government has therefore recast its position, now arguing that even assuming that it discounted the goodwill, it was within its contractual rights to do so.

Given this concession, the court denied plaintiffs' request to take discovery and set oral argument on the merits of defendant's dispositive motion. The court did this because the government had conceded, for the purpose of the motion, the best evidence the plaintiffs could hope to discover. The court stayed discovery under the principle that discovery is normally stayed pending resolution of a dispositive motion, but at the same time held that this case was no longer under the *Winstar* stay. Now that the government's dispositive motion has been denied in its entirety, this case will proceed with normal discovery.[5]

## DISCUSSION

### I. APPLICABILITY OF 28 U.S.C. § 1500

■ The government argues that 28 U.S.C. § 1500 compels the dismissal of plaintiffs' claims. 28 U.S.C. § 1500 states that

> [t]he United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States....

There has been much litigation and uncertainty about the definition of the term "claim" as used in the statute. The most recent precedent on the issue holds, however, that

> [f]or the Court of Federal Claims to be precluded from hearing a claim under § 1500, the claim pending in another court

must arise from *the same operative facts,* and must seek *the same relief.*

*Loveladies Harbor, Inc. v. United States,* 27 F.3d 1545, 1551 (Fed.Cir.1994) (emphasis in original).

The government contends that the case of *Hindes v. FDIC,* 1995 WL 534248 (E.D.Pa.), filed in the United States District Court for the Eastern District of Pennsylvania, arises out of the same operative facts as the instant case and thus precludes plaintiffs' claims. As plaintiffs note, however, the *Hindes* complaint sought equitable forms of relief such as a declaratory judgment and an accounting whereas in the instant case, plaintiffs seek monetary damages from the government. Under *Loveladies,* this distinction is sufficient to reject the government's argument.

### II. STANDING

The second basis for the government's dispositive motion is the argument that plaintiffs do not have standing to bring their claims due to their lack of privity with the Agreements between Meritor and the government. In addition, with respect to Count VII of the complaint, the government also points to disclaimer language in the 1982 Agreement which, it claims, precludes governmental liability to any third party including plaintiffs.

### A. Counts I–VI: Shareholder Derivative Claims

■ The government's contention that plaintiffs lack the requisite standing to bring their derivative claims is disposed of by the court's decision in *Suess v. United States,* 33 Fed.Cl. 89 (1995). In what the court finds to be a situation directly analogous to the instant case, we held:

> [P]laintiff-shareholders in a derivative suit bring their claims not on their own behalf, but on behalf of the corporation itself. They are not suing on any contractual right of their own, but on the rights held by the corporate entity. Thus, it is illogical to argue that plaintiffs in a derivative

5. Also pending before the court is "Plaintiffs' Motion to Modify Previous Orders Affecting Discovery." The court finds this motion to be moot

given that the denial of the government's instant motion will reopen discovery in this case.

suit must have standing as individuals in order to bring their action—*the derivative nature of the suit makes their standing as individuals irrelevant.*

33 Fed.Cl. 89 at 93–94 (emphasis in original). Following this reasoning, the court hereby finds that plaintiffs in the instant case, like those in *Suess,* have the requisite standing to bring their derivative claims.

### B. Count VII: Third Party Rights

#### (1) *The 1982 Disclaimers*

■ Unlike Counts I–VI of plaintiffs' complaint, Count VII is not derivative in nature, but is based on alleged third party rights that plaintiffs claim were created by the Agreements. Count VII alleges that plaintiffs and all the other shareholders of Meritor are the intended beneficiaries of the 1982 Agreement. They are therefore entitled to sue for the government's alleged breach of that Agreement. The government argues that the following language in Section 11.4 of the 1982 Agreement constitutes a valid disclaimer of any intent to confer intended beneficiary status to any third parties, including plaintiffs:

> Nothing expressed or referred to in this Agreement is intended or will be construed to give any Person other than the FDIC and [PFSF] and Indemnities any legal or equitable right, remedy, or claim under or in respect of this Agreement, or any provision herein contained, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of such parties and for the benefit of no other Person.

Def.App. pp. 18–19. The government contends that these disclaimers preclude any liability on its part to plaintiffs and that plaintiffs therefore lack standing to bring their third-party claims.

This court recently dealt with a similar issue in *Maniere v. United States,* 31 Fed.Cl. 410 (1994), in which it dismissed a contract claim similar to Count VII of the instant complaint on the grounds that the contract at issue did not reveal an intent of the parties to the contract to benefit third parties. In *Maniere,* the court relied heavily on the disclaimer language in the contract, which was very similar to that contained in Section 11.4 of the 1982 Agreement in the instant case.[6] The plaintiff in *Maniere* asserted a contract claim as a third party beneficiary to the Government's contract with a savings and loan, which was later placed in receivership and closed. The facts and issues of that case are thus very similar to the instant case. The government moved to dismiss Mr. Maniere's contract claim on the ground that he lacked privity to the contract between the savings and loan and the FSLIC. In granting the government's motion, this court stated that in determining whether jurisdictional requirements such as privity of contract have been met, it "looks to the agreement proffered to support the third-party beneficiary argument." 31 Fed.Cl. at 417. The court held that in order for a third party to have standing to bring a claim such as that brought in the instant case, the contract itself must reflect an intent to benefit that third party. *Id.* Based on *Maniere* and the language of the 1982 Agreement, the court finds that plaintiffs were not intended third party beneficiaries of the contract between Meritor and the government.

#### (2) *The 1991 Agreement*

■ Plaintiffs also attempt to base standing for Count VII on their theory that regardless of the validity of the 1982 Agreement's disclaimers, the 1991 Agreement "independently conferred third-party beneficiary status to Meritor's shareholders." Pl.Opp. at 18. Plaintiffs point to the absence of any limiting language in the

---

6. The disclaimer language in the contract at issue in *Maniere* read as follows:

§ 23 *Sole Benefit.* It is the intention of the parties that this Agreement, the assumption of obligations and statements of responsibilities under it, and all of its conditions and provisions are for the sole benefit of the parties hereto and for the benefit of no other person.

> Nothing expressed or referred to in this Agreement is intended or shall be construed to give any person other than the parties hereto any legal or equitable right, remedy, or claim under, or in respect to, this Agreement or any of its provisions.

31 Fed.Cl. at 419.

1991 Agreement similar to the 1982 disclaimers. In addition, they argue that the commercial context of the 1991 deal must be considered and that this context reveals the interest of both parties in encouraging investment in Meritor. Thus, they conclude, the parties intended "to benefit the stockholders as a means through which the institution may remain financially sound." *Id.* at 19.

This argument is unavailing. Even if no one would have invested in Meritor if not for its contractual rights to the counting of goodwill, it does not follow that this automatically vested intended third party beneficiary rights in all of Meritor's existing shareholders. Moreover, as the government correctly notes, the silence of the 1991 modifying agreement cannot be construed to revoke the explicit disclaimers of the 1982 contract. In light of *Maniere*, it is the language of the contract which courts must look to in determining the existence of third party rights. To have standing as third party plaintiffs in the instant case, plaintiffs would have to present language in the 1991 Agreement which affirmatively revokes the 1982 disclaimers. Mere silence on the issue is not enough. Therefore, the government's motion must be granted with respect to Count VII of the complaint.

## III. CONTRACT INTERPRETATION

As its final argument in support of its motion, the government contends that even though the FDIC did not count Meritor's supervisory goodwill when it issued the Notification, this discounting was within its rights. There appear to be two grounds for this contention. The first is that the 1991 Agreement did not obligate the FDIC to include the goodwill when deciding whether to take further supervisory action with regards to Meritor. The second is that regardless of whether or not the goodwill was counted, Meritor was in such a "precarious" and "progressively grim" financial condition that the FDIC had "adequate bases" for its

issuance of the Notification. Def.Supp. II at 7. To prevail on its motion to dismiss under this third prong then, the government must prove either (1) that the 1991 Agreement did not require it to count Meritor's goodwill for purposes of the minimum capital requirements as a matter of law; or (2) that Meritor was in such bad financial shape, as either a matter of law or undisputed fact, that even if the goodwill was counted, it is beyond question that it would have issued the Notification anyway.

### A. Contractual Obligation to Count Goodwill

■ The government contends that the 1991 Agreement to continue counting goodwill as capital for regulatory purposes applied only for purposes of compliance with regulatory requirements applicable to all institutions, and not to "institution-specific capital requirements as were necessitated by Meritor's particular financial circumstances." Def.Supp. II at 7. The government points to three provisions in the 1991 Agreement[7] and argues that at most they protected Meritor from supervisory actions based on generally-applicable capital requirements, but not against Meritor's particular capital requirements as set forth in the 1991 Agreement or from "any conclusion reached by FDIC concerning capital adequacy based upon Meritor's particular financial condition." *Id.* at 9. To conclude otherwise, it contends, would be to ignore the terms of the Agreements themselves as well as the reserved authority of the FDIC to address Meritor's particular financial problems.

The government appears to have misunderstood plaintiffs' argument. Plaintiffs are not arguing that the FDIC was prohibited from taking any supervisory action in regards to Meritor. They merely contend that any such action must include the counting of goodwill or be a breach of the contract to count such goodwill. In addition, plaintiffs

---

**7.** The specific provisions referred to by the government are Sections 1(d), 1(a), and 4 which respectively provide that: [a], (1d), the Agreement would no longer be in effect if Congress disallowed the inclusion of grandfathered goodwill; [b], (1a), set specific capitalization requirements that Meritor was to maintain; and [c], (4), reserved for the FDIC and its delegates the ability to take "such further supervisory action ... as they may deem appropriate under the circumstances." Def.Supp. II at 8.

note that Section 1(d) of the 1991 Agreement provided that if Congress changed the law relating to the counting of goodwill, the parties would renegotiate the Agreement. The court agrees with plaintiffs' position that the existence of Section 1(d) defeats the government's argument since this provision would be unnecessary if the government could at any time exclude supervisory goodwill. Finally, as plaintiffs note, the 1991 Agreement provided that the specific capital ratios which Meritor was to maintain (found in § 1(a) of the 1991 Agreement) were to be calculated with the inclusion of "the remaining balance of the goodwill created in conjunction with the Bank's acquisition of [Western]." *See* § 1(b) and (c), Def.App. at 67. These capital ratios which were to include the goodwill were indeed specific to Meritor, thus undercutting the government's proffered distinction between different types of capital requirements.

**B. The Basis For the Issuance of the Notification**

 Finally, the government contends that by December, 1992, Meritor's financial condition was so "progressively grim"[8] as to require the FDIC's issuance of the Notification. The government then argues that the issuance was "based upon its conclusion that Meritor's extremely precarious financial condition placed Meritor in an untenable position as well as in violation of the capital requirements set forth in the 1991 Agreement." Def.Supp. II at 10. The government must show, however, that the capital requirements would not have been met even if supervisory goodwill had been counted. The Notification itself refers to Meritor as, *inter alia,* operating with "an excessive volume of poor quality assets" and "an excessive volume of poor quality loans and leases in relation to its total loans and leases." Def.App. 84–85. At issue in this case is whether there was an agreement to treat goodwill as an asset as real as cash. This is a factual determination. Because Meritor was in such bad condition, the government may be correct in its contention that the bank was close

to receivership proceedings, regardless of the discounting of the supervisory goodwill. If this is correct, the plaintiffs will have a difficult burden to overcome. Nevertheless, the court finds that it would require a trial to fully resolve the factual issue of just "how bad off" Meritor was prior to the seizure.

**CONCLUSION**

For the above reasons, the government's motion to dismiss plaintiffs' complaint, or in the alternative, for summary judgment is hereby denied with the exception of Count VII of the complaint. The parties are hereby directed to proceed with discovery and to submit separate status reports, detailing the progress made on discovery, within 90 days of this decision.

**IT IS SO ORDERED.**

---

8. Plaintiffs also dispute the characterization of Meritor as being in "progressively grim" financial condition by noting that after seizing Meritor, the government sold it for a premium "in excess of $181 million." *See* Plaintiffs' Complaint at ¶ 61.