**Mark KNAUST, Barbara Knaust and Herman Karl Knaust, II, Plaintiffs,**

v.

**THE CITY OF KINGSTON; The City of Kingston Planning Board; The City of Kingston Local Development Corporation; and The United States Department of Commerce, for and through the Economic Development Administration, Wilbur F. Hawkins, Deputy Assistant Secretary of Economic Development, Defendants.**

No. 96–CV–601 (FJS).

United States District Court, N.D. New York.

Oct. 10, 1997.

McNamee, Lochner, Titus & Williams, P.C., John J. Privitera, of counsel, Albany, NY, for Plaintiff.

Cook, Tucker Law Firm, Robert D. Cook, of counsel, Kingston, NY, Ward, Sommer Law Firm, Michael J. Moore, Asst. Atty. Gen., of counsel, Albany, NY, for Defendants City of Kingston and City of Kingston Planning Bd.

U.S. Department of Commerce, Russell W. Craig, of counsel, Washington, DC, for Defendant U.S. Department of Commerce—acting through the Economic Development Agency.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, District Judge:

### Introduction

This environmental action arises out of the planning and construction of a business park on land adjacent to the Plaintiffs' property in the City of Kingston. In their complaint, Plaintiffs assert (1) claims against the City of Kingston, City of Kingston Planning Board, and the City of Kingston Local Development Corporation (collectively the "Kingston Defendants") for alleged violations of the Takings Clause of the Fifth Amendment pursuant to 42 U.S.C. § 1983; (2) claims against the City of Kingston and City of Kingston Planning Board for alleged violations of the New York State Environmental Quality Review Act ("SEQRA"), New York Environmental Conservation Law 8–0101 *et seq.;* (3) claims against the Economic Development Administration ("EDA") for alleged violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321 and 4322, and the Coastal Zone Management Act ("CZMA"), 16 U.S.C. § 1456; and finally (4) common law nuisance claims against all of the Defendants.

### Factual Background

Plaintiffs own a parcel of real property in Kingston, New York. The property contains a subterranean lake located within an abandoned limestone mine. From the 1930s to the 1960s, the Knaust family operated a large commercial mushroom farming operation in the mine using water from the lake. From the end of the 1960s to the present time, the Plaintiffs abandoned their farming operations. However, for the past several years, the family has been investigating the possibility of starting another commercial mushroom farming operation in the mine again using the water from the lake.

During the spring of 1995, the City of Kingston and the Kingston Planning Board negotiated a series of contracts and agreements with a number of companies for the development and construction of a business park on a 107 acre parcel of property adjacent to the Knaust property. The business park will eventually be the site of a new manufacturing facility for Huck International, Inc. ("Huck"), a manufacturer of hand-held power tools and a major employer in the Kingston area.

On September 20, 1995, the Defendant EDA awarded a grant of $1.86 million dollars to help fund this project pursuant to the Public Works and Economic Development Act of 1965. *See* 42 U.S.C. §§ 3121 *et seq.;* 13 C.F.R. Part 308 (the Title IX Grant Pro-

gram).[1] The EDA decided to award the grant after conducting two Environmental Assessments ("EAs") and finding that the project would have no significant impact on the environment as required by NEPA.[2]

Plaintiffs assert that the Defendants have failed to investigate the environmental impact of the proposed business park adequately. Plaintiffs maintain that the business park's storm water management system will not prevent petroleum based pollutants from seeping into Plaintiffs' lake because the system does not take into account the "karstic" (or porous) nature of the earth underlying the business park. Plaintiffs claim that the pollutants will create a nuisance and diminish the usefulness and commercial value of their property.

Presently before the Court are (1) Plaintiffs' motion for a preliminary injunction enjoining the Defendants from taking further steps to fund, develop, or construct the Kingston Business Park, (2) Plaintiffs' motion for summary judgment on their NEPA claim against the EDA, and (3) EDA's cross-motion to dismiss all of Plaintiffs' claims pursuant to Fed. R. Civ. Pro. 12(b), or in the alternative for summary judgment as to each of these claims.

## Discussion

### I. EDA's Cross Motion to Dismiss and/or for Summary Judgment on Plaintiffs' Claims Against It for Violation of NEPA and CZMA

The Court will first address the EDA's cross-motion to dismiss and/or for summary judgment. In evaluating a motion to dismiss for failure to state a claim, the Court must "accept as true all the factual allegations in the complaint" and draw all reasonable inferences in favor of the plaintiff *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993). The court will not dismiss the complaint for failure to state a claim " 'unless it appears

beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief' " *Ricciuti v. New York City Transit Auth.*, 941 F.2d 119, 123 (2d Cir.1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). ·

With respect to ·the summary judgment standard, the Court will grant summary judgment only if, despite construing the facts in favor of the non-moving party, the moving party demonstrates that "no genuine issue as to any material fact" exists and that the undisputed facts entitle the moving party to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551, 91 L.Ed.2d 265(1986). In order to avoid summary judgment, the non-moving party must support each element of its claims with specific facts set forth by affidavit or other evidence. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

As stated, the Plaintiffs have asserted claims against the EDA for violation of NEPA and the CMZA.

### A. NEPA

The EDA first argues that Plaintiffs lack standing to assert a NEPA claim. Alternatively, the EDA argues that it is entitled to summary judgment on Plaintiffs' NEPA claim because the EDA's decision to issue a Finding of No Significant Impact ("FONSI") was not arbitrary or capricious. The Court will address these arguments seriatim.

### 1. Standing

The EDA contends that the Plaintiffs lack standing to assert their NEPA claim because of the speculative nature of the alleged harm, and the fact that the Plaintiffs are concerned primarily about their economic interests— interests that do not fall within the "zone of interests" protected by NEPA. Plaintiffs, on the other hand, argue that their allegations

---

1. The Title IX program is designed to assist economically stressed areas such as Kingston, which has lost thousands of jobs in recent years, partly as a result of reduced defense spending by the federal government.

2. The EDA's finding were based, in part, on two Environmental Impact Statements prepared by the Kingston LDC under New York's environmental protection laws.

of irreversible environmental injury are sufficient to establish standing under NEPA.

At a minimum, standing under Article III of the Constitution requires that a plaintiff suffer a concrete and particularized injury that is actual or imminent, not conjectural or hypothetical; a causal connection between the injury and the conduct at issue; and that it be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision. *See Defenders of Wildlife*, 504 U.S. at 560–561, 112 S.Ct. at 2135–2136. In addition to meeting these requirements, Plaintiffs must also demonstrate that the interests they seek to protect fall within the "zone of interests" protected by the applicable statute.[3] *Lujan v. National Wildlife Federation*, 497 U.S. 871, 883, 110 S.Ct. 3177, 3185, 111 L.Ed.2d 695 (1990).

As stated, in this case Plaintiffs allege storm water runoff from the business park will contaminate the subterranean lake on Plaintiffs' property, and that this contamination will deny Plaintiffs of an economical use of their property. Plaintiffs argue that storm water runoff from the business park will contain pollutants that will not be filtered out by the business park's storm water management system. In addition, Plaintiffs allege that the ground underlying the park is "karstic" allowing the contaminated water to travel to the Knaust property. Moreover, upon reaching the Plaintiffs' property, the water will contain enough pollutants to contaminate the Knaust Lake.

■ If proven, these injuries would likely satisfy the "injury in fact" requirement of Article III. However, to conclude that such an injury is concrete rather than hypothetical, the Court must pile inference upon inference. In fact, Plaintiffs' plans for a mushroom farming operation do not even appear firm. While Plaintiffs' standing under Article III is tenuous, the Court cannot conclude as a matter of law that none exists.

■ Turning to the EDA's argument that Plaintiffs' claims do not fall within the "zone of interests" covered by NEPA, the Court must refer to the particular provision of law upon which the Plaintiffs rely, as opposed to, the overall purpose of the Act in question. *Bennett v. Spear*, — U.S. —, —, 117 S.Ct. 1154, 1167, 137 L.Ed.2d 281 (1997). In this case, Plaintiffs allege that the EDA has failed to comply with section 4332(2)(c) of NEPA, which requires all federal agencies to prepare an detailed Environmental Impact Statement for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(2)(c). However, economic injury does not, by itself, fall within NEPA's zone of interests. *Sabine River Auth. v. United States Dep't of Interior*, 951 F.2d 669, 676 (5th Cir.1992). Thus, to withstand a motion for summary judgment, the Plaintiffs must allege that the proposed business park threatens to impose such injury as to damage the recreational use, aesthetics, or environmental well-being of the Knaust property requiring the preparation of an EIS. *See Goos v. Interstate Commerce Comm'n*, 911 F.2d 1283, 1290 (1990). In this case, the Court is persuaded that the Plaintiffs' claims are primarily grounded in their concern that the business park will deprive them of the ability to operate a mushroom growing venture. Yet, because the Court must draw all reasonable inferences in the Plaintiffs' favor, the Court finds that Plaintiffs' allegations of environmental injury are sufficient to establish standing under NEPA.

## 2. Merits of Plaintiffs' Underlying NEPA Claim

Turning to the merits of Plaintiffs' NEPA claims, Plaintiffs allege that the EDA's FONSI was arbitrary and capricious because the EDA failed to consider a number of the factors established by the Council on Environmental Quality ("CEQ").[4] Specifically,

3. Because NEPA does not provide a private right of action, the Plaintiffs must proceed under § 10(a) of the Administrative Procedure Act ("APA"), which entitles a person to judicial review when the person is "adversely affected or aggrieved by agency action *within the meaning of the relevant statute.*" 5 U.S.C. § 702 (emphasis added).

4. The CEQ has established procedures to guide federal agencies in determining whether a proposed project will significantly impact the environment. 40 C.F.R. §§ 1500–17.

Plaintiffs allege that the EDA failed to consider (1) the unique characteristics of the geographic area, (2) whether the Kingston Business Park will irretrievably commit (or contaminate) natural resources located on the Knaust Property, and (3) whether the effects on the quality of the human environment are likely to be highly controversial. The EDA argues that the Administrative Record fully supports the EDA's FONSI. Moreover, the EDA argues that the Administrative Record specifically addresses the concerns raised by the Plaintiffs.

### Purpose of NEPA/Standard

NEPA is designed to infuse environmental considerations into the Government's decision-making processes by requiring federal agencies to follow certain procedures. *City of New York v. Department of Transp.,* 715 F.2d 732, 747–748 (2d Cir.1983). Although these procedures may affect substantive decisions, NEPA does not mandate particular substantive outcomes. Pursuant to NEPA, the CEQ has promulgated regulations governing the procedures an agency must follow to ensure that environmental considerations are taken into account. Pursuant to those regulations, an agency must first prepare an Environmental Assessment (or ("EA")). The EA must include a list all agencies and persons consulted in the preparation of the EA, and brief discussions regarding the necessity for the proposal and the environmental impacts of alternative courses of action. 40 C.F.R. 1508.9(b). Based on the EA, the agency must then determine whether or not the proposed government action will significantly affect the quality of the human environment. If the agency determines that the proposed action will *not* have a significant impact, then the agency will complete its review by issuing a FONSI. 40 C.F.R. 1501.4. Alternatively, if the agency determines that the proposed agency action will have a significant impact on the quality of the human environment, then the agency must prepare a more detailed EIS.

The role of the courts in reviewing this process is simply to ensure that the relevant agency's decisions are not arbitrary or capricious. *Baltimore Gas and Elec. v. Natural Resources Defense Council, Inc.,* 462 U.S. 87, 98, 103 S.Ct. 2246, 2252, 76 L.Ed.2d 437 (1983). A reviewing court may not overturn an agency's determination and substitute its own judgment for that of the agency. *Vermont Yankee Nuclear Power v. Natural Resources Defense Council,* 435 U.S. 519, 558, 98 S.Ct. 1197, 1218, 55 L.Ed.2d 460 (1978).

### Administrative Record

According to the Administrative Record submitted in this case, the EDA issued its first EA on August 17, 1995, finding that the proposed project was not controversial and did not significantly affect the quality of the human environment. Based on this first EA, the EDA concluded that an EIS was not necessary and recommended that a FONSI be issued. The EDA then awarded the Title IX grant to Kingston and KLDC. On February 7, 1996, the EDA received correspondence from the Plaintiffs alleging that the project posed an "imminent threat" to the environment. In response, the EDA suspended the grant award so it could conduct a Supplemental EA.

In preparing its Supplemental EA, EDA reviewed the reports submitted by the Plaintiffs as well as numerous comments submitted by other governmental agencies, including the Fish and Wildlife Service, the U.S. Farm Agency, and the New York Department of Environmental Conservation ("NY-DEC"). Additionally, EDA twice sent its Regional Environmental Officer to Kingston to visit the proposed site and meet with the Plaintiffs. The EDA also welcomed any additional reports or documentation that the Plaintiffs wished to the agency to consider.

In its Supplemental EA, the EDA addressed each area of concern raised by the Plaintiffs. First, the EDA acknowledged that the proposed project would result in relatively permanent changes in land use, but concluded that none of the resources involved were limited in nature, and that their commitment would not be significant. The EDA also addressed the Plaintiffs' specific concern about water resources. As stated, Plaintiffs argued that the business park's storm water system threatened to irretrievably and irreversibly commit natural resources by dispos-

ing pollutants into Plaintiffs' lake and surrounding aquifer. Plaintiffs base their claim, in part, on the opinion of hydrogeologist, Paul A. Rubin. Mr. Rubin asserts that the ground underlying the business park facilitates the rapid transmission of liquids through the earth because it is "karstic." However, also in the Administrative Record is a report by Charles Merguerian, P.h.D., Professor of Structural Geology at Hofstra University and President of Duke Geological Laboratory, which reaches the exact opposite conclusion.

Plaintiffs also rely heavily on an affidavit submitted by Jonathon Jones, a licensed engineer specializing in water management.[5] Jones questions the effectiveness of the proposed storm water runoff system based on the types of pollutants generally found in storm water runoff and a review of the storm water management report. However, NY-DEC, the regulatory agency in New York State charged with protecting environmental quality, found that the plans for the storm water management plan were acceptable and substantially reduced the potential for groundwater contamination. Based on all the information available to it for its supplemental assessment, the EDA concluded that even if runoff from the proposed park entered the Knaust mine, it should not adversely impact the water quality in the mine. Despite these findings, the EDA even conditioned the grant award on a requirement that any company locating in the business park must construct spill containment areas around its loading dock areas to protect against accidental spills. As a result, EDA concluded that the proposed project did not pose a significant threat to the water resources located on the Knaust property.

As stated, Plaintiffs allege that EDA failed to evaluate the "unique characteristics" of the geographic area. Plaintiffs assert that the Knaust property is highly unique because it includes limestone mines modernized with an air management system that depends on the quality of the water drawn from the

Knaust Lake. In response to Plaintiffs' concerns about the uniqueness of the property as a mushroom growing area, the EDA investigated the possibility of the land being prime or unique farmland. However, the EDA discovered that the area is currently zoned for one-family residences and that there were no applications for variances or proposals to reinitiate mushroom farming in the area. Moreover, the EDA contacted the United States Farm Service Agency, who advised EDA that the construction of the proposed business park Would not result in any loss of prime or unique agricultural land.

Plaintiffs' final complaint is that EDA failed to consider whether the effects on the quality of the human environment are likely to be highly controversial. As stated, according to the regulations promulgated by the CEQ, the degree to which the effects on the quality of the human environment are likely to be highly controversial is one factor that the agency should consider when determining whether an action "significantly" impacts the human environment. 40 C.F.R. § 1508.27(b)(4). The term "controversial" refers to a substantial dispute as to the size, nature, or effect of the major federal action, not simply the level of neighborhood opposition that exits. *Hanly v. Kleindienst*, 471 F.2d 823, 830 (2d Cir.1972). Throughout its Supplemental EA, the EDA acknowledges that some difference of opinion exists concerning the environmental effects of the proposed business park. Moreover, in the conclusion of its Supplemental EA, the EDA specifically states that the development of the business park at the proposed location is controversial. However, the EDA does not refer to the proposal as "highly" controversial. Moreover, even if the EDA determined that the effects of the proposed business park were "highly" controversial, that is but one factor in determining whether the project significantly impacts the human environment.

---

5. The Court notes that the EDA received Mr. Jones's affidavit after it made its FONSI determination. However, the Court finds that the affidavit does not contain any information that "presents a seriously different picture of the en-

vironment impact of the proposed project" that would require additional analysis by EDA. *State of Wisconsin v. Weinberger*, 745 F.2d 412, 421 (7th Cir.1984).

In addition to those concerns raised in Plaintiffs' brief, the Supplemental EA also addressed the effects of the proposed business park on floodplains and wetlands, vegetation and wildlife, endangered species, historic resources, wild and scenic rivers, ambient air quality, coastal zone management, and pollution prevention. Moreover, the EDA reviewed the alternative sites considered by the Kingston Defendants, alternative uses of the proposed site, and the "no action" alternative. Based on its analysis of all of the information available to it, the EDA acknowledged that the proposed business park would create adverse effects that some people may find unacceptable. However, the EDA determined that none of the adverse effects appear to have the potential to affect the quality of the human environment significantly. Furthermore, the EDA concluded that economic opportunities created by the project outweighed any adverse effects. Therefore, the EDA determined that an EIS was not required and reaffirmed the grant award.

■ After thoroughly reviewing the Administrative Record, the Court finds that the EDA has adequately considered and disclosed the environmental effects of the business park. Therefore, the Court holds that the EDA's actions in this matter were not arbitrary or capricious as a matter of law. Accordingly, the Court grants EDA's cross-motion for summary judgment on Plaintiffs' NEPA claim against it and consequently denies the Plaintiffs' motion.

**B. CZMA**

The Coastal Zone Management Act ("CZMA"), 16 U.S.C. § 1456(d), forbids federal agencies from approving proposed projects that are inconsistent with a state's coastal zone management plan.[6] As stated, the EDA has moved for summary judgment on this claim. The Court will begin its analysis with the issue of standing.

**1. Standing**

The EDA argues that the Plaintiffs lack standing to bring their CZMA claim under the APA because the interest that the Plaintiffs seek to protect does not fall within the zone of interests protected by the CZMA. Specifically, the EDA alleges that the CZMA seeks to encourage and assist the states in their management of coastal zones and was not intended to protect the type of speculative economic interests of which the Plaintiffs complain.

■ Like NEPA, the CZMA does not provide a private right of action against the federal government for noncompliance. Rather, judicial review is made available only under § 10(a) of the APA. *State of New York v. DeLyser*, 759 F.Supp. 982, 986 (W.D.N.Y. 1991). Therefore, Plaintiffs must meet the same standing requirements as discussed above.

As an initial matter, the Court could not find a single case in which an *individual* brought a claim challenging a federal agency's failure to obtain a consistency determination pursuant to the CZMA.[7] Moreover, the Plaintiffs do not even assert that the

---

6. 16 U.S.C. § 1456(d) provides:

"State and local governments submitting applications for Federal assistance under Federal programs, in or outside of the coastal zone, affecting any land or water use of natural resource of the coastal zone shall indicate the views of the appropriate state or local agency as to the relationship of such activities to the approved management program for the coastal zone. Such applications shall be submitted and coordinated in accordance with the provisions of section 6506 of Title 31. Federal agencies shall not approve proposed projects that are not consistent with the enforceable policies of a coastal state's management program, expect upon a finding by the Secretary that such project is consistent with the pur-

poses of this chapter or necessary in the interest of national security."

7. The Court finds that the CZMA, a grant-in-aid statute, was primarily intended to benefit the states and increase the states' ability to manage their coastlines. However, environmental groups have been granted standing to bring claims for violations of the CZMA. *See State of California v. Watt*, 683 F.2d 1253, 1296–1271 (9th Cir.1982), *rev on other grounds sub nom., Secretary of the Interior v. California*, 464 U.S. 312, 104 S.Ct. 656, 78 L.Ed.2d 496 (1984). Although environmental groups are not necessarily the intended beneficiaries of the CZMA, they are more likely to have standing because of their shared interest in the preservation of coastal areas.

APA is the basis for their CZMA claim in the complaint. However, even assuming the Court treats the Plaintiffs' CZMA claim under the APA, the Court again questions whether the Plaintiffs have demonstrated a concrete and particularized harm. Moreover, the relationship between the interest that Plaintiffs seek to protect and the CZMA's zone of interest is tenuous at best. Notwithstanding these concerns, the Court will proceed to address the issue of mootness.

**2. Mootness**

■ The EDA's second argument is that the Court should dismiss Plaintiffs' CZMA claim because the claim is moot. Specifically, the EDA alleges that it has fulfilled its statutory obligations by obtaining a statement from the New York Department of State ("NYDOS"), dated May 21, 1996, which provides that the Kingston Business Park is consistent with New York State's Coastal Management Plan ("CMP").[8]

■ To comply with 16 U.S.C. § 1456(d), a Federal agency must obtain a consistency determination from the appropriate state agency 90 days before final approval of a major Federal activity declaring that the proposed project is consistent with the state's coastal management program. Here, EDA issued its first EA and FONSI with the stipulation that disbursement of the grant was conditioned upon the receipt of evidence showing that the proposed project was consistent with New York's coastal zone management plan. Prior to issuing its Supplemental EA, the Kingston Urban Cultural Park Commission, acting as the Waterfront Consistency Review Board, found that the proposed project was consistent with the Local Waterfront Revitalization Program. Finally, on May 21, 1996, NYDOS determined

that the proposed project would advance New York State's CMP as expressed in the City of Kingston's approved Local Waterfront Revitalization Program.[9] Therefore, the Court finds that Plaintiffs' CZMA claim is moot, and grants the EDA's cross-motion to dismiss the claim.[10]

**C. Common Law Nuisance**

Finally, the EDA moves to dismiss Plaintiffs' common law nuisance claim. EDA asserts that the Court should dismiss the claim because the United States has not waived its sovereign immunity, and the Plaintiffs have failed to set forth a basis for subject matter jurisdiction.

■ It is well settled that the federal government cannot be held liable in tort for the discretionary acts of its employees in the absence of a waiver. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 687–688, 69 S.Ct. 1457, 1460–1461, 93 L.Ed. 1628 (1949). Here, the EDA's decision to award a Title IX grant was discretionary in nature, and the Plaintiffs have not alleged that the federal government has waived its sovereign immunity. Therefore, the Court lacks subject matter jurisdiction over the plaintiffs' common law nuisance claim and grants the EDA's motion to dismiss the claim.

**II. Preliminary Injunction**

Remaining in this action are Plaintiffs' claims against the Kingston Defendants for violation of the Takings Clause of the Fifth Amendment, pursuant to 42 U.S.C. § 1983, SEQRA, and Plaintiffs' common law nuisance claims. Plaintiffs' claims are based on the assertion that storm water runoff containing pollutants from the Kingston Business Park will seep through the earth into the Plaintiffs' property causing irreparable harm to

---

**8.** NYDOS is the agency designated to implement the New York State CMP.

**9.** The Court notes that EDA did not obtain a consistency determination until after it issued its Supplemental EA. This violates the spirit 15 C.F.R. § 930.34, which requires agencies to provide the consistency determination to State agencies at least 90 days before final approval of the Federal activity unless both the Federal agency and the State agency agree to an alternative notification schedule. However, Plaintiffs do not

allege any harm resulting from EDA's delay, and the state did not lodge any protest in this case.

**10.** Moreover, the Plaintiffs seek injunctive and declaratory relief directing the Department of Commerce to disapprove the Kingston Business Park project as being inconsistent with the New York State CMP. Because the CZMA is only a procedural statute, the Court may not require the agency to reach a particular outcome.

the Knaust Lake. To prevent the alleged harm, Plaintiffs move to enjoin the Kingston Defendants from any further construction of the business park during the pendency of this action.

 A preliminary injunction is an extraordinary and drastic remedy for which plaintiffs carry a heavy burden of persuasion. *See Borey v. National Union Fire Ins. Co.,* 934 F.2d 30, 33 (2d Cir.1991). To succeed on a motion for a preliminary injunction, the movant must demonstrate irreparable harm and either (1) a likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *International Dairy Foods Ass'n v. Amestoy,* 92 F.3d 67, 70 (2d Cir.1996) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam)).

 A showing of "probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Reuters Ltd. v. United Press Int'l, Inc.,* 903 F.2d 904, 907 (2d Cir.1990) (internal quotations and citations omitted). "[A] mere possibility of irreparable harm is insufficient to justify the drastic remedy of a preliminary injunction." *Borey,* 934 F.2d at 34.

 Here, Plaintiffs allege that further development of the Kingston Business Park will cause irreparable harm including pollution, degradation, contamination and destruction of the Knaust Lake, as well as the deprivation of all economically viable uses of the Knaust property.[11] In support of their allegations, Plaintiffs assert that Jonathon Jones's affidavit establishes "beyond dispute" that storm water runoff will contain pollutants and contaminants, and that the affidavit of Mr. Rubin "indisputably establishes" that the storm water runoff will migrate to the Knaust property. As discussed above, Mr.

Jones reviewed the storm water management plan on a conceptual level, and based his review on the types of pollutants generally found in storm water runoff and on a report prepared for the KLDC by professional engineers describing the storm water management system. In essence, Mr. Jones questioned the effectiveness of the storm water system to remove pollutants without having actually visited the site.

Also, Mr. Rubin states that the business park is underlain by a karst aquifer system which facilitates the rapid transmission of liquids into the earth. Based on his analysis, Mr. Rubin concluded that storm water runoff from the Kingston Business Park will be discharged to the karst aquifer and "most likely" into the Knaust Lake. (Rubin Aff. ¶ 24.)

The Defendants point to the testimony of Dr. Merguerian which directly refutes Mr. Rubin. After personally visiting the site, Dr. Merguerian emphatically states that the region is *not* karstic, and that the region experiences normal surface drainage. Dr. Merguerian also states that karstic features occur on a regional level and that he could find no professional geologist who has characterized the Kingston region as karstic. Moreover, the Defendants emphasize that NYDEC and other governmental agencies charged with protecting the environment approved the storm water management plans after carefully reviewing them.

 After thoroughly reviewing all of the evidence submitted in this case, the Court finds that, at best, Plaintiffs have demonstrated that there is a "possibility" that storm water runoff from the Kingston Business Park will make its way into the Plaintiffs' lake. However, the speculative nature of the alleged harm in this case is clearly insufficient to justify the drastic remedy of a preliminary injunction.[12] Therefore, the

---

11. As an initial matter, Plaintiffs allegations of economic harm cannot support their motion for a preliminary injunction because economic harm, by its very nature, is redressable with monetary damages. *See Borey,* 934 F.2d at 34.

12. Moreover, even if storm water runoff polluted the Knaust Lake, it is difficult to see why the Plaintiffs could not be fully compensated with monetary damages. For example, the Plaintiffs could recover compensatory damages for any costs associated with removing pollutants from the lake.

Court denies Plaintiffs' motion for a preliminary injunction.[13]

## Conclusion

Therefore, after carefully considering the allegations in the complaint, the papers submitted, and the arguments of counsel, it is hereby

ORDERED that Plaintiffs' motion for summary judgment is DENIED with respect to their NEPA claim; and it is further

ORDERED that EDA's cross-motion for summary judgment is GRANTED with respect to all of Plaintiffs' NEPA, CZMA, and common law nuisance claims against the EDA, and therefore all claims against the United States Department of Commerce are DISMISSED; and finally, it is further

ORDERED that Plaintiffs' motion for a preliminary injunction is DENIED.

The Plaintiffs are directed to initiate a telephone status conference on November 6, 1997 at 9:00 a.m.

**IT IS SO ORDERED.**

---

**13.** Even if Plaintiffs suffered irreparable harm, the Court doubts whether the plaintiffs could satisfy the second prong of the preliminary injunction test. As an initial matter, with respect to all of Plaintiffs' remaining claims, the Court questions whether Plaintiffs have demonstrated the "injury in fact" necessary to assert standing. Moreover, each of Plaintiffs' claims appears to be insufficient on the merits. For example, Plaintiffs' Takings Clause claim will likely fail because the Plaintiffs have not demonstrated that there has been a physical invasion of their property, or that the Defendants' actions have deprived them of all economical use of their property. Plaintiffs' SEQRA claim will likely fail because the Kingston defendants seem to have fulfilled their requirement under SEQRA to take a "hard look" at the environmental impacts of the project. Finally, Plaintiffs' nuisance claim will likely fail because under New York Law, a landowner cannot be held liable for damages to adjoining property owners for the natural flow of surface water. Moreover, the balance of the hardships in this case tips decidedly in favor of the Defendants because the City of Kingston stands to lose a substantial revenue and over two hundred jobs if the Court grants the injunction; whereas, the Plaintiffs stand to lose only potential profits from a yet uncertain economic use of their property.