**Mark KNAUST, Barbara Knaust and Herman Karl Knaust, II, Plaintiffs,**

v.

**THE CITY OF KINGSTON; the City of Kingston Planning Board; the City of Kingston Local Development Corporation; and the United States Department of Commerce, for and through the Economic Development Administration, Wilbur F. Hawkins, Deputy Assistant Secretary for Economic Development, Defendants.**

No. 1:96–CV–601.

United States District Court, N.D. New York.

March 26, 2002.

McNamee, Lochner, Titus & Williams, P.C., Albany, NY (John J. Privitera, of counsel), for plaintiffs.

Young, Sommer, Ward, Ritzenberg, Wooley, Baker & Moore, LLC, Albany, NY (Michael J. Moore, of counsel), for Defendants.

## MEMORANDUM–DECISION AND ORDER

SCULLIN, Chief Judge.

### I. INTRODUCTION

Plaintiffs commenced this action pursuant to 42 U.S.C. § 1983, seeking injunctive relief and compensatory damages for an alleged taking of their real property as a result of the operations of the adjacent City of Kingston Business Park in Kingston, New York ("Business Park"), in violation of the Fifth and Fourteenth Amendments to the United States Constitution.

Plaintiffs also asserted two state law causes of action, alleging violations of the New York State Environmental Quality Review Act ("SEQRA," Environmental Conservation Law, Article 8) against the City and the Planning Board and alleging the creation of a common law nuisance against all Defendants. *See* Complaint at ¶¶ 47–54.[1]

Presently before the Court is Defendants' motion to dismiss the complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure or, in the alternative, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Court heard oral argument in support of, and in opposition to, this motion on March 5, 2002, and reserved decision. The following constitutes the Court's determination of the pending motion.

## II. BACKGROUND

### A. Factual Background

Plaintiffs own a three-acre parcel of undeveloped real property, which adjoins the Business Park. Plaintiffs' deed to the property references the existence of "caves" on the property. These caves are actually remnants of an underground limestone mine abandoned more than 100 years ago.

Until the mid–1960s, when it was abandoned, Plaintiffs ran a commercial mushroom farming operation on the property. Since that time, the property has been fallow. Plaintiffs' three-acre parcel is now zoned RRR residential. Farming, including mushroom farming, is prohibited in the City's residential zones on parcels of less than five acres. Thus, either a commercial or agricultural use of the property would require discretionary site plan approval from the City of Kingston Planning Board.

In 1991, Plaintiff Mark Knaust petitioned the City to reduce his taxes. At that time, he asserted that the property had a full value of $7,000 and that it had no potential as income producing or commercial property. *See* Affidavit of Diana Miller, sworn to May 14, 1996 ("Miller Aff."), at Exhibit "A," attached to the Affidavit of Michael J. Moore, sworn to October 1, 2001 ("Moore Aff."), at Exhibit "14." In December 1995, as administrative proceedings related to the Business Park neared conclusion, Plaintiffs announced plans to revive their commercial mushroom farming operation and have since claimed that the property has significant, unique economic value. However, Plaintiffs have not taken any steps to obtain the zoning change, use variance or site plan approval from the City which they need to conduct a commercial or agricultural venture on their property.

During the Spring of 1995, the City of Kingston and the Kingston Planning Board negotiated a series of contracts and agreements with a number of companies for the development and construction of the Business Park on a 107–acre parcel of property adjacent to Plaintiffs' property. Phase I of the project was partially funded with an economic development grant of $1.86 million from EDA, which was used to construct the Business Park's infrastructure. Local and State agency approvals for the Business Park were secured between April 1995 and April 1996 and construction commenced in May 1996.

As part of its infrastructure, the Business Park included a storm water manage-

---

1. Plaintiffs also sued the United States Department of Commerce, Economic Development Administration ("EDA"), for alleged violations of federal law in connection with a grant of funds for the Business Park. The Court granted EDA's motion for summary judgment and dismissed all of Plaintiffs' claims against EDA. *See Knaust v. City of Kingston*, 978 F.Supp. 86, 89–94 (N.D.N.Y. 1997).

ment system, which has been fully installed and operational since December 1996. Storm water runoff from the Business Park consists of precipitation encountering building roofs, paved areas of the parking lot and access road, and landscaped and wooded areas. To manage this runoff, the City of Kingston Local Development Corporation ("KLDC") devised a storm water collection system involving two levels of treatment. Storm water passes into open grates fitted with vapor traps and deep sumps to remove contaminants and sediments in the water. *See* Affidavit of Dennis Larios, P.E., dated May 14, 1996 ("Larios Aff."), at ¶ 6, attached to the Moore Aff. at Exhibit "6." Storm water is then conveyed to two 5,000 gallon "Vortechs" units for a second level of treatment. *See id.* at ¶ 7. From the "Vortechs" units, treated storm water is conveyed to an abandoned quarry on the Business Park property, then to a stilling pool and then to an existing surface water drainage swale. *See id.* at ¶¶ 9–10.

State and federal environmental regulatory agencies have reviewed this storm water management system and determined that it involves a benign discharge of treated storm water to surface waters. On March 7, 1996, the New York Department of Environmental Conservation ("DEC") indicated that this system "adequately addresses this Department's concerns regarding potential groundwater contamination," and describes the Business Park's storm water as presenting "no greater contamination threat than . . . a shopping center." The letter also states that any contaminants will be "properly treated by the . . . Vortechs . . . systems." *See* Affidavit of Richard F. Riseley, sworn to May 14, 1996 ("Riseley Aff."), at Exhibit "1," attached to the Moore Aff. at Exhibit "5." Similarly, in May 1996, the United States Environmental Protection Agency ("EPA") determined that the storm water management system was not subject to EPA juris-

diction as an "underground injection well." *See* Riseley Aff. at Exhibit "3."

**B. Prior proceedings in this case**

Plaintiffs allege in their complaint that the subterranean lake on their vacant residentially-zoned property adjacent to the Business Park was contaminated and threatened with contamination from the Business Park's storm water management system, allegedly resulting in a taking in violation of the Fifth and Fourteenth Amendments to the United States Constitution. *See* Complaint at ¶¶ 1, 2, 15, 16, 18. Plaintiffs initially moved for a preliminary injunction to halt the federal funding and construction of the Business Park. This Court denied that motion for failure to demonstrate "probable irreparable harm" holding that "at best, Plaintiffs have demonstrated that there is a 'possibility' that storm water runoff from the Kingston Business Park will make its way into the Plaintiffs' lake." *Knaust v. City of Kingston,* 978 F.Supp. 86, 95 (N.D.N.Y.1997), *vacated as moot,* 157 F.3d 86 (2d Cir.1998). The Court also "question[ed] whether Plaintiffs ha[d] demonstrated the 'injury in fact' necessary to assert standing." *Id.* at 96 n. 13. Finally, the Court noted that "Plaintiffs' Takings Clause claim will likely fail because the Plaintiffs have not demonstrated that there has been a physical invasion of their property[.]" *Id.*

Plaintiffs appealed the denial of their motion for a preliminary injunction. The Second Circuit dismissed the appeal as moot because the Business Park's infrastructure already had been constructed and all federal funds allocated to the project had been disbursed. *See Knaust v. City of Kingston,* 157 F.3d 86 (2d Cir. 1998). The Second Circuit also vacated this Court's earlier order, without prejudice to a renewed order consistent with its opinion. *See id.* This Court then issued a

new order granting the EDA's motion for summary judgment, dismissing all claims against the EDA, and dismissing Plaintiffs' preliminary injunction motion as moot. *See Knaust v. City of Kingston,* No. 96–CV–601, 1999 WL 31106 (N.D.N.Y. Jan.15, 1999). In its second order, this Court restated its earlier reservations concerning Plaintiffs' alleged injury in fact and their constitutional standing, holding that "Plaintiffs' standing under Article III is tenuous" and "to conclude that [Plaintiffs'] injury is concrete rather than hypothetical, the Court must pile inference upon inference." *Id.,* 1999 WL 31106, at *3.

Having now completed discovery, Defendants assert that Plaintiffs have failed to establish that they have standing to maintain their taking claims. Alternatively, Defendants contend that, even if Plaintiffs do have standing, Defendants are, nonetheless, entitled to summary judgment with respect to those claims. The Court will address each of these arguments in turn.

## III. DISCUSSION

### A. Standing

Rule 12(h)(3) of the Federal Rules of Civil Procedure permits a party to raise the defense that a court lacks subject matter jurisdiction over an action at any time. *See Accolla v. State of N.Y.,* No. 87 CIV. 2272, 1988 WL 68167, *1 (S.D.N.Y. June 16, 1988). Thus, the fact that this case is more than five years old does not preclude Defendants from raising the issue at this time.

■ Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, "[a] court may dismiss a case for lack of subject matter jurisdiction ... when it lacks the statutory or constitutional power to adjudicate the case." *Brown v. Am. Legion Cortland City Post 489,* 64 F.Supp.2d 96, 99 (N.D.N.Y.1999). The party seeking to invoke jurisdiction bears the burden of demonstrating that it exists. *See id.* (citation omitted). Moreover, "[w]hen a motion addresses the existence of subject matter jurisdiction, no presumptive truthfulness attaches to a plaintiff's allegations." *Id.* (citation omitted). In considering such a motion, the court may consider conflicting written and oral evidence and may " 'decide for itself the factual issues which determine jurisdiction.' " *Id.* (quoting *Williamson v. Tucker,* 645 F.2d 404, 413 (5th Cir.), *cert. denied,* 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981)).

In the present case, Defendants argue that the Court lacks subject matter jurisdiction over this action because Plaintiffs lack standing to assert their taking claims against Defendants. To satisfy Article III's standing requirements, "a plaintiff must show (1) it has suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth v. Laidlaw Envtl. Servs., Inc.,* 528 U.S. 167, 180–81, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). The Supreme Court has defined "particularized" to mean "that the injury must affect the plaintiff in a personal and individual way." *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560 n. 1, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Moreover, to establish standing in the specific context of a taking claim, the plaintiff must demonstrate "the requisite interest in the property at issue and the deprivation thereof [by a governmental entity]." *Roedler v. U.S. Dep't of Energy,* No. CIV. 98–1843, 1999 WL 1627346, *10 (D.Minn. Dec.23, 1999) (citing *Maniere,* 31 Fed. Cl. at 420). To show this "requisite interest," the plaintiff "must demonstrate ownership of the property at the time of the taking." *Maniere v. Unit-*

*ed States,* 31 Fed. Cl. 410, 420 (Fed.Cl. 1994) (citations omitted). "If the plaintiff fails to establish this most basic requirement of the personal injury component of the standing analysis, a court need not progress to the other considerations of standing." *Id.* (citations omitted).

### 1. Plaintiffs' ownership interest in the property at issue

■ Plaintiffs claim that they hold title to the entire underground mine, approximately 250,000 square feet of space and both of the so-called lakes. Defendants have always contended that Plaintiffs own only those limited portions of the mine and the "western lake" that lie beneath their residential property. In 1998, the City of Kingston commenced an action in New York State Supreme Court, Ulster County, pursuant to the provisions of the New York Real Property Actions and Proceedings Law, disputing Plaintiffs' claim and alleging that the City of Kingston and KLDC owned a majority of the underground mine. In a Decision and Order, dated September 27, 2000, the court ruled in favor of the City's title claim. *See, generally,* Decision of the Supreme Court, Ulster County (Bradley, J.), dated September 27, 2000, attached to Defendants' Reply Memorandum of Law. The Third Department affirmed that decision. *See City of Kingston v. Knaust,* 287 A.D.2d 57, 733 N.Y.S.2d 771 (3d Dep't 2001). Despite Plaintiffs' assertions to the contrary, the Court finds that these state court decisions have preclusive effect on the issue of Plaintiffs' ownership interest in the subterranean caves and lakes at issue in this case.

" 'Collateral estoppel bars a party from raising a specific factual or legal issue in a second action when the party had a full and fair opportunity to litigate the issue in a prior proceeding.' " *DiMascio v. City of Albany,* No. 93–CV–0452, 1999 WL 244648, *2 (N.D.N.Y. Apr.21, 1999) (quoting *Transaero Inc. v. La Fuerza Aerea*

*Boliviana,* 162 F.3d 724, 731 (2d Cir. 1998)). " 'More specifically, collateral estoppel applies when (1) the issues in both proceedings are identical, (2) the issue in the prior proceeding was actually litigated and actually decided, (3) there was full and fair opportunity to litigate in the prior proceeding, and (4) the issue previously litigated was necessary to support a valid and final judgment on the merits.' " *Id.* (quotation omitted). A federal court is required to afford a state court judgment " 'the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered.' " *Id.* (quoting *Migra v. Warren City Sch. Dist. Bd. of Educ.,* 465 U.S. 75, 104 S.Ct. 892, 896, 79 L.Ed.2d 56 (1984)). "Under New York law, '[t]he doctrine of collateral estoppel ... precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party ... whether or not the tribunals or causes of action are the same.' " *Id.* (quoting *Ryan v. New York Tel. Co.,* 62 N.Y.2d 494, 478 N.Y.S.2d 823, 826, 467 N.E.2d 487 (1984)).

In the present case, one of the issues before the state court was the ownership rights of both the City and the Knausts in the subterranean mines beneath their respective parcels. Also at issue was the ownership of the water in the subterranean lakes located below the surface of both parcels. This latter issue is identical to the issue presently before this Court because in order to demonstrate standing in this case Plaintiffs must establish that they "owned" the water in the lake which lies beneath the surface of their parcel.

Not only was this issue raised in the state court—as a basis for one of the Knausts' counterclaims—but Justice Bradley specifically decided this issue and did so in some detail. He began his analysis

by noting that he agreed with the City that "the underground lakes at the mines are not 'percolating waters,' but rather are distinctly defined and permanent and, as such, maintain the character of surface water." *See* State Court Decision at 9. He explained further that "the rules of use and ownership applicable to 'a natural water course on the surface' apply to underground water located in a 'distinct, permanent and well-defined channel ...'" *Id.* (quoting *Flanigan v. State of New York*, 113 Misc. 91, 183 N.Y.S. 934). Based upon these legal principles, Justice Bradley concluded that

> while the parties are owners of the mines underneath their respective parcels, **they do not own the water located directly underneath their respective parcels,** and each is entitled to the continuation of the natural flow and the reasonable use of the waters in the flooded portions of the mine ... so long as the use is not inconsistent with a like reasonable use by the other riparian owners.

*Id.* (internal citations and other citation omitted) (emphasis added).[2]

Moreover, the Court concludes that the other two elements necessary for the application of collateral estoppel are also met. It is clear that Plaintiffs had a full and fair opportunity to litigate the issue of their ownership rights in both the mines and the water underneath their parcel in the state court proceeding. Finally, because the ultimate issue before the state court was the respective ownership interests of the parties in the subterranean mines and lakes, the issue of the ownership interests in the water in those subterranean lakes was necessary to support Justice Bradley's decision. Accordingly,

the Court concludes that Plaintiffs cannot relitigate the issue of their ownership interest in the water beneath their parcel of land.

### 2. *Injury in fact*

Although Plaintiffs do not own the water in the subterranean lake beneath their parcel, they do have a right to the reasonable use of that water. Assuming that the right to a reasonable use of this natural resource is a sufficient property interest to support a taking claim, Plaintiffs must still demonstrate that they suffered an "actual or imminent" injury to their right of reasonable use of the water in that part of the subterranean lake underneath their property.

Plaintiffs contend that for subject matter jurisdiction purposes the relevant question with respect to the "injury in fact" element of standing is whether Defendants' actions have injured Plaintiffs' property interests, a separate and distinct question from whether Defendants caused Plaintiffs' property to be contaminated or created an imminent threat that their property would be contaminated. Although, as a general proposition, Plaintiffs' argument might carry some weight, in this particular case where Plaintiffs' only property interest in the water is the right to its reasonable use, there can be no injury—and thus no taking—unless that water was contaminated or in danger of being contaminated as a result of Defendants' actions.

Plaintiffs have produced no evidence of any contamination of the subterranean lake as a result of the runoff from the Business Park's storm water management system. In fact, Plaintiffs have ad-

---

2. The Court notes that even if it were not bound by Justice Bradley's conclusion with respect to Plaintiffs' ownership interests in the water in the subterranean lake beneath their parcel, the Court would reach the same result based upon the same well-established legal principles.

mitted that they never collected any samples of the runoff for laboratory analysis, even though they served KLDC with a Notice of Discovery and Inspection of the system in March, 2000, several months before discovery closed. *See* Third Interrogatory Response, Interrogatory # 1, attached to the Moore Aff. at Exhibit "1;" Deposition of Paul Rubin, dated June 19, 2000 ("Rubin Tr."), attached to the Moore Aff. at Exhibit "2" at 92; Moore Aff. at Exhibit "17." Moreover, Plaintiffs have admitted that there is "no detectable contamination" in any of the water samples they have collected from the lake for laboratory analysis. *See* Third Interrogatory Response, Interrogatory # 1 and Exhibit "A," attached to Moore Aff., at Exhibit "1;" Rubin Tr. at 13–14, 89. Finally, Plaintiffs have presented no evidence that the Business Park's storm water management system is not removing contaminants as designed and intended. In fact, the discovery Plaintiffs conducted on the Business Park property in April 2000 did not even seek to test the functioning of the storm water management and treatment system. *See* Rubin Tr. at 89–92.

Apparently conceding that there is no evidence of present contamination of the subterranean lake beneath their property, Plaintiffs attempt to establish standing by relying upon the threat of such contamination. Plaintiffs seem to ignore the fact that more than a hypothetical threat is necessary to establish standing. Rather, the evidence must demonstrate that the alleged threat is "imminent." There is absolutely no evidence in the record to support a finding that there is an "imminent" threat of contamination to the water in the subterranean lake beneath Plaintiffs' property from the Business Park's storm water management system which would interfere with Plaintiffs' reasonable use of that water. The very fact that the storm water management system has been fully operational since December 1996—more than five years—without any proof that at any point during that time there has been any contamination of the subterranean lake militates against a finding that the threat of contamination is "imminent." At most Plaintiffs have raised the spectre of a threat. Moreover, neither in their papers nor at oral argument were Plaintiffs able to articulate any basis for their belief—other than mere conjecture—that such an imminent threat exists. Therefore, based upon the evidence in the record, the Court concludes that Plaintiffs have failed to demonstrate that they have suffered any injury as a result of the Business Park's storm water management system and, thus, they lack standing to maintain their taking claims against Defendants. Accordingly, the Court grants Defendants' motion and dismisses Plaintiffs' taking claims for lack of subject matter jurisdiction.

**B. Merits of Plaintiffs' taking claims**

Even assuming that the Court had subject matter jurisdiction over Plaintiffs' taking claims, Defendants would still be entitled to summary judgment with respect to those claims.

Summary judgment should be granted where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When presented with a motion for summary judgment, the court's task is "limited to discerning whether there are any genuine issues of material fact to be tried, not to decide them." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir.1994).

" 'A physical occupation of private property by the Government which is adjudged to be of a permanent nature is a taking, and that is true without regard to whether

the action achieves an important public benefit or has only minimal economic impact on the owner.'" *McKay v. United States,* 199 F.3d 1376, 1381 (Fed.Cir.1999) (quoting [*Hendler v. United States,* 952 F.2d] at 1375) (holding that placing of groundwater monitoring wells on the plaintiffs' property, thereby interfering with their mineral estate, constituted a taking). The Supreme Court has explained that a permanent physical occupation of property occurs only when governmental action permanently destroys the three rights associated with the ownership of property: the power "'to possess, use and dispose of it.'" *Loretto v. Teleprompter Manhattan CATV Corp.,* 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (quoting *United States v. General Motors Corp.,* 323 U.S. 373, 378, 65 S.Ct. 357, 359, 89 L.Ed. 311 (1945)) (holding that a New York statute that required a landlord to permit the installation of a cable television company's cable facilities on her rental property constituted a taking). If the government permanently occupies property, it effectively destroys those rights. *See id.*

■ As an initial matter, as addressed above, Plaintiffs do not "own" the waters in the subterranean lake beneath their property—they only have a right to the reasonable use of that water. An essential element of a taking claim is that the plaintiff own the property at issue at the time of the alleged taking. *See Maniere,* 31 Fed. Cl. at 420 (citations omitted). Therefore, because Plaintiffs do not own the water in the subterranean lake beneath their property, there is no basis to support a taking claim against Defendants.

Moreover, to the extent that Plaintiffs base their taking claim upon the argument that the Business Park's storm water management system has interfered with their right to reasonably use the water in the subterranean lake, Plaintiffs have produced no evidence to support such a claim. As noted above, there is no evidence that the water in the subterranean lake beneath Plaintiffs' parcel has been contaminated or is in imminent danger of being contaminated. Therefore, there is no support for a finding that Defendants' actions have, in any way, interfered with Plaintiffs' right to use the water in the subterranean lake in any reasonable manner.[3] Accordingly, assuming that the Court has subject matter jurisdiction over Plaintiffs' taking claims, the Court grants Defendants' motion for summary judgment with respect to those claims.

## C. Ripeness of Plaintiffs' regulatory taking claim

"[T]o be ripe for review, a regulatory takings claim must satisfy a two-pronged inquiry." *McCormack Sand Co. v. Town of N. Hempstead Solid Waste Mgmt. Auth.,* 960 F.Supp. 589, 595 (E.D.N.Y. 1997) (citing *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985)). First, "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson County Regional Planning Comm'n v. Hamilton Bank,* 473 U.S. 172, 186, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Second, the land owner must "seek compensation through the

---

**3.** In addition, Plaintiffs' current inability to use the water in the subterranean lake for a commercial mushroom farming operation is not due to the Business Park's storm water management system but rather to the fact that Plaintiffs' property is zoned RRR residential, which prohibits agricultural or commercial uses on parcels of less than five acres. As noted above, despite being aware of these limitations, Plaintiffs have not sought a zoning change, a use variance or a site plan from the City's Planning Board.

procedures the State has provided for doing so." *Id.* at 194, 105 S.Ct. 3108 (footnote omitted).

In the present case, Plaintiffs assert that the application of the City's zoning law to the caves underneath their parcel renders them valueless and contravenes Plaintiffs' expectation to revive their commercial mushroom farming operation. The Court cannot consider the merits of this claim at this time, however, because Plaintiffs have never sought any relief from the City's zoning law; i.e., they have never applied to the City's Planning Board for a zoning change, a use variance, or a site plan approval. Until they do so, and the Planning Board arrives at a final decision regarding their request, the Court cannot evaluate "the economic impact of the challenged [zoning law] and the extent to which it interferes with reasonable investment-backed expectations"—which are "among the factors of particular significance" in determining whether a taking has occurred. *Williamson County Regional Planning Comm'n*, 473 U.S. at 190–91, 105 S.Ct. 3108 (citations omitted). Accordingly, the Court grants Defendants' motion to dismiss Plaintiffs' regulatory taking claim on the ground that it is not ripe for adjudication.

### D. Plaintiffs' state law claims

Having granted Defendants' motion to dismiss Plaintiffs' taking claims, the Court declines to exercise its supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367. Accordingly, the Court dismisses Plaintiffs' state law claims without prejudice.

### IV. CONCLUSION

After carefully considering the file in this matter, the parties' submissions and oral arguments and the applicable law, and for the reasons stated herein, the Court hereby

**ORDERS** that Defendants' motion to dismiss Plaintiffs' taking claims for lack of subject matter jurisdiction is **GRANTED**; and the Court further

**ORDERS** that Defendants' motion to dismiss Plaintiffs' regulatory taking claim on the ground that it is not ripe for adjudication is **GRANTED**; and the Court further

**ORDERS** that, in the alternative, even if the Court has subject matter jurisdiction over Plaintiffs' taking claims, Defendants' motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that Plaintiffs' state law claims are **DISMISSED WITHOUT PREJUDICE**; and the Court further

**ORDERS** that the Clerk of the Court enter judgment in favor of Defendants and close this case.

**IT IS SO ORDERED.**